J-A03038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE OPTION VENA CAVA FILTER LITIGATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: REX MEDICAL, L.P. | : | No. 2332 EDA 2020 |

Appeal from the Order Entered October 30, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170501600

BEFORE:   STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED FEBRUARY 9, 2022**

This is a mass tort litigation matter concerning the medical devices, inferior vena cava filters, intended to prevent pulmonary embolisms. Defendant Rex Medical, L.P. (Appellant) appeals from the discovery order, entered on the "Master Docket," in the Philadelphia Court of Common Pleas, which in effect directed Appellant to provide certain financial information related to the plaintiffs' claims for punitive damages.[1]  The trial court suggests the underlying order is not appealable, and specifically not an appealable

_____

[1] ***See*** Pa.R.C.P. 4003.7 ("A party may obtain information concerning the wealth of a defendant in a claim for punitive damages only upon order of court setting forth appropriate restrictions as to the time of the discovery, the scope of the discovery, and the dissemination of the material discovered.").

 As we discuss ***infra***, the trial court's October 30, 2020, order adopted the August 1, 2020, recommendation and opinion of the discovery master, and overruled Appellant's objections thereto.  We note no appellee's brief has been filed.

collateral order under Pa.R.A.P. 313.[2]  We agree, as we conclude that Appellant, a limited partnership, does not enjoy the same privacy and policy considerations as individuals who are directed to disclose personal financial information.  We thus quash this appeal.

Appellant is a Pennsylvania limited partnership, with its principal place of business in Conshohocken, Pennsylvania.[3]  The trial court aptly summarized the underlying facts and procedural history:

> Inferior vena cava (IVC) filters are cone-shaped medical devices implanted into the inferior vena cava to "catch" blood clots as they travel from the lower portion of the body to the lungs and heart; IVC filters were designed to prevent pulmonary emboli[.]  In June 2009, [Appellant] obtained § 510(k) clearance from the FDA to market the Option filter as a permanent IVC filter, with the option for removal.  In December 2013, [Appellant] obtained § 510(k) clearance to market a second filter, the Option Elite filter.  [Appellant] sold the entire . . . product line to Defendant Argon Medical L.P. [(Argon)] in 2015 for $160 million[.]

Trial Ct. Op., 7/15/21, at 2 (record citations omitted).  Appellant and Argon are the two named defendants in the amended long form complaint.

On May 11, 2017, the trial court

created the ***In re: Option™ Vena Cava Filter Litigation*** mass tort program for the coordination of all cases in which a plaintiff alleged . . . they suffered injuries as a result of the implementation

---

[2] ***See*** Pa.R.A.P. 313(b) ("A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.").

[3] Plaintiffs' First Amended Master Long Form Complaint & Jury Demand, 11/17/17, at 2; Appellant's Brief at 25.

of an Option™ Vena Cava Filter device. Pursuant to Case Management Order 1, a "Master Docket," May Term 2017 No. 1600, was created to serve as a depository for the filing of pleadings, motions, orders and other documents common to all cases; once a document or order has been filed on the Master Docket, it could be incorporated by reference in any other properly filed Motion or Pleading.

Case Management Order 3 required the filing of a Master Long-Form Complaint which made allegations common to all plaintiffs in the litigation; the filing of the Master Long-Form Complaint superseded the pleadings in each individual case. Each individual plaintiff was then required to file a case-specific short-form complaint, which incorporated the Master Long-Form Complaint by reference and set forth the factual circumstances unique to that individual plaintiff. A Master Complaint was filed on October 16, 2017 and an Amended Complaint was filed November 17, 2017.

\* \* \*

Generally, the Amended Complaint alleges Defendants knew, or should have known, the Option and Option Elite filters were defective and unreasonably dangerous based on i) [the Defendants'] failure to conduct sufficient clinical testing, ii) the IVC filters['] high rate of embedment, fracture, migration, and excessive tilting and perforation of the vena cava wall once implanted in the human body, and iii) Defendants' failure to issue a recall of the filters or otherwise notify consumers that a safer device was available.

Important for the purposes of this Opinion, the Amended Complaint alleges Defendants provided false information relating to the filters['] safety, efficacy, failure rate, and approved uses to patients, physicians, and medical community at large.

The Amended Complaint sounds in Negligence, Strict Liability – Failure to Warn, Strict Liability – Design Defect, Strict Liability – Manufacturing Defect, Breach of Implied Warranties, Breach of Express Warranty, Negligent Misrepresentation, Violations of the Unfair Deceptive Trade Practices Act, Wrongful Death, Loss of Consortium, and Punitive Damages.

Trial Ct. Op. at 1-3 (paragraph breaks added and record citations omitted).

According to Appellant, the current number of cases in the mass tort litigation "is around 1700." Appellant's Brief at 16 n.7.

We note the relevance of one particular lawsuit to this matter: ***Reed-Brown v. Rex Medical L.P.***, docketed in the Philadelphia Court of Common Pleas at March Term 2017 No. 241. The Honorable Michael Erdos presided over a jury trial in October of 2019. The trial court in the instant matter summarized the ***Reed-Brown*** case as follows:

> Plaintiff Reed-Brown presented evidence showing [Appellant] "failed to submit accurate results from studies, failed to send complaints to the FDA regarding the Option Filter[,] and misrepresented data." [***Reed-Brown*** Trial Ct. Op., 9/9/20, at 22.[4]] Furthermore, Plaintiff Reed-Brown proved [Appellant] "lobbied its clinical investigators to change their findings, chose not to use the gold standard of a CT scan to look for complications, told the monitor not to look for perforations[,] and misrepresented to the FDA that there were four [pulmonary emboli] when there were actually eight." ***Id.*** at 24. "They also omitted critical data such as the complaints from physicians regarding their inability to retrieve the Option Filter once it was implanted." ***Id.*** at 24-25.
>
> Despite testimony from [Appellant] that it had a negative net worth, the ***Reed-Brown*** jury found this evidence warranted the imposition of punitive damages, and awarded punitive damages in the amount of $30,315,726[.[5] ***Reed-Brown*** Trial Ct. Op at 2.]

---

[4] Appellant provided, in its brief, a copy of the ***Reed-Brown*** trial court opinion.

[5] Appellant avers that "[i]n early September 2020, the ***Reed-Brown*** cases[ ] were all settled [sic]." Appellant's Brief at 15. Such settlement appears to have been reached after the jury trial, and after Appellant took an appeal to this Court in that matter. ***See Brown v. Rex Medical, L.P.***, 336 EDA 2020

*(Footnote Continued Next Page)*

Trial Ct. Op. at 3 (paragraph break added).

In connection with Appellant's claim that it had a negative net worth, we reiterate that in December 2015, Appellant sold the Option product line to Argon for $160 million. *See* Discovery Master's Recommended Order, 8/1/20, at 2 n.1.[6]

> On March 7, 2016, the first IVC filter case against [Appellant] was filed in Philadelphia. Plaintiffs allege that shortly thereafter, in 2016, [more than] $23,000,000 was transferred by [Appellant] to limited partner Jim McGuckin, a comparable amount [to] limited partner Whitfield Gardner, and almost $3,000,000 to [Appellant's] president Lindsay Carter. It is alleged that Gardner, McGuckin and Carter authorized these transfers.

*Id.* These alleged transfers totaled almost $50 million. Trial Ct. Op. at 3. According to Appellant, on December 23, 2019, a separate "fraudulent conveyance lawsuit was filed in Philadelphia county against" Appellant, Gardner, McGuckin, and Carter. *See* Discovery Master's Op., 8/1/20, at 4.

The trial court summarized:

> To explore the discrepancy between the $160 million sale price and the testimony [at the *Reed-Brown* trial that Appellant had a negative net worth,] Plaintiffs sought to depose [three individuals: limited partner Gardner; Appellant's accountant, Celeste Barr; and Appellant's accounting manager, Barbara Aruffo.] Plaintiffs also sought documents related to [Appellant's revenue, profits,

_____

(Pa. Super.) Appellant filed a praecipe to discontinue that appeal on October 8, 2020.

[6] The Discovery Master issued both a three-page recommended order and an 11-page opinion.

bank accounts, tax returns, balance sheets, and bonus payments made to employees.]

[Appellant] objected to these discovery requests as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, any value gained from the depositions is outweighed by the unreasonable annoyance and embarrassment to the witnesses, the information requested is not reasonably related to proper punitive damages evaluation, and testimony on those matters would lead to unfair prejudice, confusion of the issues, and the jury being misled into deciding issues on irrelevant circumstances. *See* [Discovery Master's Op., 8/1/20, at 4.] Additionally, [Appellant] argued Plaintiffs were improperly using this mass tort litigation to obtain discovery for a separate fraudulent conveyance lawsuit filed against [Appellant, President Carter and Limited Partners McGuckin and Gardner.] Finally, [Appellant] argued Plaintiffs have not proven they are entitled to punitive damages discovery on all cases.

On August 1, 2020, the Court-appointed Discovery Master, the Honorable Mark Bernstein (Ret.), granted Plaintiffs' requests in part and permitted Plaintiffs to serve no more than ten interrogatories limited to the following topics:

1) [Appellant's] net worth,

2) annual financial statements or balance sheets from 2014 – present,

3) the receipt of significant funds since January 2015, including income, capital infusions, or proceeds of sales,

4) profits received by [Appellant] from the sale of the Option product line, and

5) the disposition of the funds from the sale of the Option product line, including bonuses, the name of the person(s) authorizing the distributions, and the process by which the distribution from the proceeds of sale were made.

*See* Discovery Master's [Recommended Order at] 1-2.

Discovery Master Bernstein further recommended all of the responses shall be treated as confidential and will only be

disclosed to attorneys and their agents working in this litigation. Discovery Master Bernstein denied Plaintiffs' request for depositions without prejudice to renewing their request if the responses to the interrogatories are deemed inadequate. *Id.*

Trial Ct. Op. at 3-4 (paragraph breaks added and some citations omitted).

On October 14, 2020, Appellant filed a 14-page objection to the Discovery Master's recommendations. It argued the master erred in permitting the plaintiffs to conduct punitive damages discovery because: (1) "Plaintiffs failed to prove they were entitled to punitive damages in each case pending in this litigation;" (2) the discovery "would be cumulative of the punitive damages evidence presented in the *Reed-Brown* matter[;]" and (3) the discovery would improperly go beyond the topic of Appellant's "wealth." Trial Ct. Op. at 5.

On October 30, 2020, the trial court entered the underlying order, overruling Appellant's objections and adopting the Discovery Master's recommendations. Appellant filed a timely notice of appeal.

On January 28, 2021, this Court issued a *per curiam* rule on Appellant to show cause why this appeal should not be quashed, as the trial court's October 30, 2020, did not appear to be a final.[7] Appellant responded that the

---

[7] We note that on March 23, 2021, almost four months after the notice of appeal was filed, and two months after this Court's rule to show cause, the trial court issued an order directing Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant filed a statement on April 13, 2021.

order was an appealable collateral order pursuant to Pa.R.A.P. 313. On February 17th, this Court discharged the rule to show cause, advising that the merits panel may revisit this issue.[8]

Appellant presents four issues for our review:

1. When counsel files a master Long Form complaint at a mass tort docket to encompass as many plaintiffs and claims and laws as possible,

> (a) do the ordinary pleading and proof requirements apply such that two conclusory paragraphs are inadequate to establish a *prima facie* punitive damages claim; and

> (b) if a jury applies Georgia law to resolve a design-defect claim as to one device and one defendant after that plaintiff's other claims have been dismissed (including manufacturing defect and failure to warn) based on the facts of her case, does Pennsylvania law limit that jury's decision to that case?

2. Is the prejudice and risk of juror confusion impermissibly multiplied by the overbreadth of the order in ordering information far beyond that authorized by Pa.R.Civ.P. No. 4003.7[?]

3. Does due process limit the ability to punish a defendant to proof of wrongdoing and intent by that defendant in that case?

4. Was the order overbroad in reaching beyond the limited partnership itself?

Appellant's Brief at 8 (paragraph breaks added).

---

[8] Contrary to Appellant's summation, this Court did not "allow[ ] the appeal to proceed as a collateral order appeal[.]" *See* Appellant's Brief at 23. Instead, this Court merely discharged the rule to show cause, and allowed the "appeal [to] proceed," but specifically advised Appellant that the merits panel may "revisit[ ]" this issue. Order, 2/17/21.

In its opinion, the trial court suggests this appeal should be quashed, as the underlying order does not meet the definition of an appealable collateral order under Pa.R.A.P. 313(b). Trial Ct. Op. at 6-7. Appellant maintains this appeal is proper under the same rule. After review, we conclude the order is not appealable, and therefore quash this appeal.

"[A]n appeal may be taken as of right from any final order of a . . . trial court." Pa.R.A.P. 341(a). A final order is generally one that "disposes of all claims and of all parties" or "is entered as a final order pursuant to" Pa.R.A.P. 341(c). Pa.R.A.P. 341(b)(1), (3).

However, an appeal may be taken as of right from a collateral order pursuant to Pa.R.A.P. 313. That Rule provides:

> **(a) General rule.—**An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> **(b) Definition.—**A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(a)-(b).

This Court has explained:

> To satisfy the collateral order doctrine, the appellant must demonstrate that the order "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost."
>
> The first prong, separability, occurs when we can address the issue surrounding the disputed order without analyzing the

- 9 -

ultimate issue in the underlying case. As for the second prong, importance, "it is not sufficient that the issue be important to the particular parties." Instead, the issue "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." We must interpret the collateral order doctrine narrowly, and each of the above prongs must be clearly present for us to deem an order collateral.

"[T]he question of whether the collateral order doctrine has been met is jurisdictional in nature." "Where an order satisfies Rule 313's three-pronged test, an appellate court may exercise jurisdiction even though the order is not final." "If the test is not met, [ ] and in the absence of another exception to the final order rule, there is no jurisdiction to consider an appeal of such an order."

*Cabot Oil & Gas Corp. v. Speer*, 241 A.3d 1191, 1196–97 (Pa. Super. 2020)

(*Cabot Oil*) (paragraph break added and citations omitted).

"[I]n general, discovery orders are not final, and are therefore unappealable." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1056 (Pa. Super. 2008) (citation omitted). However, "an appeal from a discovery order raising a question of the application of a **privilege** is separable from the underlying issue, so long as the issue of privilege may be addressed by an appellate court without analysis of the underlying issue." *Id.*, *quoting* *Castellani v. Scranton Times, L.P.*, 916 A.2d 648, 652 (Pa. Super. 2007).

In its brief, Appellant reiterates its claim that the requirements of Pa.R.A.P. 313 have been met. In support, it avers the following: the trial court's order will require Appellant "to disclose private financial information that far exceeds the narrow parameters set forth in [Pa.R.C.P.] 4003.7, which only permits the disclosure of 'information concerning the wealth of a

defendant.'" Appellant's Brief at 1. Furthermore, the discovery permitted would be "a broad-ranging inquiry not just into net worth but also the uses of money, the recipients of money, and the decision-making about where money might be spent." *Id.* at 2. "[C]ompelling [Appellant] to produce highly private information . . . that necessarily exposes highly private information of non-parties requires immediate review, because of the havoc that can be wrought from disseminating broadly information[.]" *Id.* at 3. The discovery would also be directed against both parties and non-parties. Finally, the fact that the order is entered on the mass tort docket would make the discovery "available to any of the 1[,]700+ cases (and any still-to-be-filed), with the only restriction on its use being subject to" the discretion of each trial judge, who is "assigned on the eve of trial." *Id.* If this appeal were quashed, Appellant "could not appeal until there is a final order **at the mass tort docket** — [with] all claims and all parties resolved pursuant to [Pa.R.A.P.] 341 — which will take many years[.]" *Id.* at 4 (emphasis in original). Thus, "their privacy rights in their financial documents will be irreparably lost if review of this question 'is postponed until final judgment[.]'" *Id.*

First, we reject Appellant's reliance on the decision in *Farrell v. Regola*, 150 A.3d 87 (Pa. Super. 2016), which, as Appellant summarizes, concerned mental health records. *See Farrell*, 150 A.3d at 97; Appellant's Brief at 3. Pennsylvania courts "have uniformly held that, if an appellant asserts that the trial court has ordered him to produce materials that are **privileged**, then

- 11 -

Rule 313 applies." **Farrell**, 150 A.3d at 95 (emphasis added). The discovery order in this case does not relate to any mental health records, nor any "privilege," as that term arises for Rule 313 purposes. **See id.** (psychiatrist/psychologist-patient privilege). **See also Yocabet v. UPMC Presbyterian**, 119 A.3d 1012, 1016 n.1 (Pa. Super. 2015) (this Court had jurisdiction over appeal from non-final discovery order pertaining to information protected by peer review privilege and attorney-client privilege).

Next, we note this Court has found appellate jurisdiction existed over appeals concerning the discovery of an **individual's** tax returns and financial information. In **Cabot Oil**, on which Appellant also relies, the trial court directed the defendant attorneys and their client to produce, in discovery, tax returns and other financial documents. **Cabot Oil**, 241 A.3d at 1194. On appeal, this Court agreed that the second prong — importance — of the collateral order doctrine was met:

> [The defendants] have a significant privacy interest in their tax returns. **Dougherty v. Heller**, . . . 138 A.3d 611, 629 n.10 [(Pa. 2016), *citing*] **Cooper v. Schoffstall**, . . . 905 A.2d 482, 485 n.3 (Pa. 2006) (**individuals** have "privacy interest in information contained in federal tax returns. . . . Such information is made confidential per federal statute"); **J.S.** [**v. Whetzel**, 860 A.2d 1112, 1117 (Pa. Super. 2004)] (defense **witness's** privacy interest in information on federal 1099 tax forms raised "sufficiently important public policy concern" for purposes of collateral order doctrine).
>
> Further, [the defendants] have a privacy interest in their bank records and net worth documents. **Merithew v. Valentukonis**, . . . 869 A.2d 1040, 1043 (Pa. Super. 2005), *abrogated on other grounds*, **Rae v. Pa. Funeral Dirs. Ass'n**, . . . 977 A.2d 1121 (Pa. 2009) (discovery order compelling defendant to disclosure

- 12 -

**her** complete financial worth implicated her privacy interest in her financial information and raised sufficiently important public policy concern to satisfy second prong of collateral order doctrine).

***Cabot Oil***, 241 A.3d at 1197 (emphasis and paragraph break added).

However, not only did the discovery order in ***Cabot Oil*** pertain to **individuals'** tax returns and financial information, the decisions cited by the ***Cabot Oil*** panel likewise concerned the financial information of **individuals.** ***Cooper***, 905 A.2d at 485 (discovery of financial records of a non-party expert medical witness); ***Merithew***, 869 A.2d at 1042 (interrogatories of plaintiff/individual concerning her financial worth); ***J.S.***, 860 A.2d at 1117 (discovery of non-party expert medical witness' 1099 tax forms).

Appellant cites no authority in support of the position implicit, but not outright articulated, in its argument — that for Rule 313 purposes, as a limited partnership, it enjoys the same privacy interest extended to **individuals**. As the trial court recognizes, some of the discovery information will necessarily reveal some individuals' names, for example, information concerning "bonuses" and "the name of the person(s) authorizing the distributions." ***See*** Trial Ct. Op. at 5. However, directing Appellant, a limited partnership, to disclose this specific information is distinguishable from the facts presented in the cases cited above, which directed particular individuals to provide, broadly, years of tax returns and other documents showing their entire "financial worth." ***See Cooper***, 905 A.2d at 485; ***Cabot Oil***, 241 A.3d at 1197; ***Merithew***, 869 A.2d at 1042; ***J.S.***, 860 A.2d at 1117.

Accordingly, we conclude Appellant has not established the second prong of the collateral order doctrine — that the underlying discovery order "involves a right too important to be denied review." **See** Pa.R.A.P. 313(b); **Cabot Oil**, 241 A.3d at 1196–97. Thus, we are constrained to quash this appeal. **See Cabot Oil**, 241 A.3d at 1196–97. We need not review whether the other two prongs of the collateral-order test are met. **See** Pa.R.A.P. 313(b); **Cabot Oil**, 241 A.3d at 1196–97.[9]

Appeal quashed.

Judge Dubow joins the Memorandum.

Judge Stabile Concurs in the Result.

_____

[9] The trial court further suggests Appellant has waived its argument— that the discovery order would require "disclosure of private financial information of non-defendants in this litigation" —for failure to include it in its objections to the Discovery Master's recommendation. Trial Ct. Op. at 7. Appellant acknowledges the trial court's discussion of waiver, but does not cite, in refutation, the place in the certified record where it preserved this particular issue. **See** Appellant's Brief at 23-24 & n.9.

In any event, to the extent Appellant, a limited partnership, argues the discovery order infringed upon the privacy rights of individuals, we remind Appellant's counsel that a party "lack[s] standing to assert the alleged deprivation of another's rights." **See Cabot Oil**, 241 A.3d at 1196 ("Under the Rules of Civil Procedure, [the a]ppellants' spouses or law partners could have moved to intervene in this case to assert and protect their rights."). **See also** Pa.R.C.P. 2327(4) ("At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene . . . if the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.").

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/09/2022