J-A16019-20

2020 PA Super 258

| | |
|---|---|
| CABOT OIL AND GAS CORPORATION AND GASSEARCH DRILLING SERVICES CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| CHARLES F. SPEER, SPEER LAW FIRM, P.C., EDWARD CIARIMBOLI, CLANCY BOYLAN AND FELLERMAN & CIARIMBOLI | |
| Appellants | No. 1926 MDA 2019 |

Appeal from the Order Entered October 31, 2019
In the Court of Common Pleas of Susquehanna County
Civil Division at No: 2017-00936

BEFORE: PANELLA, P.J., STABILE, J., and MUSMANNO, J.

OPINION BY STABILE, J.:                    **FILED OCTOBER 26, 2020**

In this action for wrongful use of civil proceedings ("Dragonetti Act")[1] and other claims, Appellants, Charles F. Speer, Speer Law Firm, P.C., Edward Ciarimboli, Clancy Boylan, and Fellerman & Ciarimboli, appeal a discovery order compelling them to produce their tax returns and other financial documents to counsel for Appellees, Cabot Oil and Gas Corporation and Gassearch Drilling Services Corporation. The order limited disclosure of the documents to counsel for Appellees and prohibited disclosure to Appellees themselves, a type of order known as "attorneys' eyes only" ("AEO"). Appellants contend that this order violates their privacy rights as well as privacy rights of their spouses and law partners. We have jurisdiction to

---

[1] 42 Pa.C.S.A. §§ 8351-8354.

address this question under the collateral order doctrine embodied in Pa.R.A.P. 313. We affirm because the AEO order properly balances Appellants' privacy interests with Appellees' right to obtain Appellants' financial information for the purpose of seeking punitive damages.

Appellees allege the following in their Dragonetti complaint. Prior to 2012, Appellant Speer, a Missouri lawyer, routinely filed suits against pig farm operators based on alleged damages from odors and other purported nuisances. Complaint, ¶ 22. After Missouri enacted legislation at the end of 2011 that put an end to Speer's pig farm lawsuits, Speer set his sights on Pennsylvania's natural gas industry, thus "switch[ing] his focus from pigs to rigs." *Id.*, ¶ 25. Speer and Speer Law teamed up with Appellants Edward Ciarimboli, Clancy Boylan and the firm of Fellerman & Ciarimboli to commence nuisance claim lawsuits against natural gas operators in Pennsylvania. *Id.*, ¶¶ 27-28. One of their Pennsylvania clients, Raymond Kemble, filed a federal lawsuit against Appellees in 2009 and entered a settlement agreement with Appellees in 2012. *Id.*, ¶¶ 32-33, 49-53.

In 2017, despite knowing that Kemble had settled with Appellees in 2012, Appellants filed a second federal lawsuit against Appellees in 2017 alleging state law claims for negligence and nuisance. *Id.*, ¶¶ 62-84. Counsel for Appellees advised Speer that the complaint in the second federal lawsuit was frivolous because its allegations were time-barred and released by the 2012 settlement, and it failed to satisfy federal requirements for diversity jurisdiction. *Id.*, ¶¶ 86-87. Appellees filed a motion to dismiss the complaint

- 2 -

for lack of subject matter jurisdiction. *Id.*, ¶ 90. Appellants filed a motion to dismiss all defendants pursuant to Fed.R.C.P. 41(a)(2).[2] *Id.*, ¶ 91. On June 9, 2017, the federal court granted Appellants' motion. *Id.*, ¶ 94.

In August 2017, Appellees filed a complaint in the Court of Common Pleas of Susquehanna County asserting the Dragonetti claim against Appellants and Kemble and demanding a jury trial.[3] Appellants filed an answer to the complaint with new matter.

In June 2018, Appellees served document requests on Appellants seeking their tax returns, bank records, and net worth information for years 2013 to the present. Appellants responded to these requests with claims of privilege and objections that they were burdensome, vexatious and not likely to lead to admissible evidence. Appellants did not assert that the document requests violated their own privacy rights or privacy rights of third persons.

On August 6, 2019, Appellees filed a motion to compel production of these documents. One day later, on August 7, 2019, the trial court granted Appellees' motion to compel and ordered Appellants to turn over the documents on or before September 30, 2019.

---

[2] Fed.R.C.P. 41(a)(2) provides that, except in circumstances not relevant here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

[3] Appellees also sued Appellants for tortious interference with contract and sued Kemble for breach of contract and permanent injunctive relief.

On August 15, 2019, Appellants filed a motion for reconsideration arguing that (1) the discovery order violated Pa.R.C.P. 4003.7, the rule governing punitive damages discovery,[4] (2) the court ignored its previous order that Appellants need not answer Appellees' document requests until the court held a hearing on punitive damages discovery, and (3) the court failed to provide Appellants an opportunity to file a written response to Appellees' motion to compel. Appellants did not contend in their motion for reconsideration that the discovery order violated their privacy rights.[5]

On September 9, 2019, the court scheduled a hearing for October 25, 2019 on Appellants' motion for reconsideration. Ten days later, Appellants filed a written response to Appellees' motion to compel. This response raised, for the first time, the issue that is the centerpiece of the present appeal: a claim that the discovery order violated Appellants' privacy rights. Appellants, however, only argued that the discovery order violated their own privacy rights, not privacy rights of their spouses or law partners. Similarly, during the hearing on the motion, Appellants contended that the discovery order infringed their privacy rights, but not those of their spouses or partners.

---

[4] Pa.R.C.P. 4003.7 provides, "A party may obtain information concerning the wealth of a defendant in a claim for punitive damages only upon order of court setting forth appropriate restrictions as to the time of the discovery, the scope of the discovery, and the dissemination of the material discovered."

[5] Appellants merely argued that the evidence establishing a *prima facie* case for punitive damages discovery might vary from Appellant to Appellant. Motion For Reconsideration, ¶ 15.

On October 31, 2019, the trial court denied Appellants' motion for reconsideration and ordered Appellants to produce the requested documents within sixty days. The court found punitive damages discovery permissible because Appellees "submitted evidence of intentional, willful and wanton conduct by [Appellants] in filing a second federal litigation with full knowledge of the prior settlement agreement between [Appellees] and [Kemble]." Order, 10/31/19, at n.1. The court declared this discovery "confidential" and ordered counsel for Appellees not to "copy, disclose or utilize the contents of [this] discovery for any purpose without leave of court" or "disclose [this] discovery in any manner to any persons or entities, including Appellees, unless [Appellees'] counsel obtains court approval for the disclosure." *Id.*, ¶¶ 3-5. The court directed that following termination of the litigation, the order's confidentiality provisions would remain binding, and counsel for Appellees must destroy this discovery and verify that they had done so. *Id.*, ¶¶ 6-7.

On November 27, 2019, Appellants filed a notice of appeal under the collateral order doctrine. Appellants filed a Pa.R.A.P. 1925 statement of matters complained of on appeal claiming that the October 31, 2019 discovery order violated their privacy rights and asserting, for the first time, that this order violated the privacy rights of their spouses and law partners. Pa.R.A.P. 1925 Statement, ¶¶ 1-2. The trial court did not file a Pa.R.A.P. 1925 opinion.

Appellants raise three issues in this appeal:

A. Whether this appeal falls within the collateral order doctrine pursuant to Pa.R.A.P. 313.

B. Whether the trial court's failure to limit the scope of the punitive damages discovery was an error of law.

C. Whether this appeal was timely taken from the October 31, 2019 order, which was a new amended order with substantial modifications from the trial court's August 7, 2019 order.

Appellants' Brief at 9.

In essence, Appellants argue that the October 31, 2019 order violates their privacy rights and the corresponding rights of their spouses and law partners by requiring production of tax returns, bank records and net worth[6] documents from 2013 onward. Appellees ask us to quash this appeal because it does not satisfy the collateral order doctrine and is untimely. Alternatively, Appellees argue that discovery of Appellants' financial documents is proper in view of their right to seek punitive damages under the Dragonetti Act, and the trial court safeguarded Appellants' privacy by restricting access to their documents to Appellees' counsel.

We first observe Appellants cannot appeal the October 31, 2019 order on the ground that it infringes the privacy rights of their spouses and law partners, because Appellants lack standing to assert the alleged deprivation of another's rights. **Commonwealth v. Butler**, 291 A.2d 89, 90 (Pa. 1972) ("appellant lacks standing to assert the alleged deprivation of another's constitutional rights"). Under the Rules of Civil Procedure, Appellants' spouses

---

[6] Net worth is "the amount by which assets exceed liabilities." **Sprague v. Walter**, 656 A.2d 890, 920 (Pa. Super. 1995).

- 6 -

or law partners could have moved to intervene in this case to assert and protect their rights. Pa.R.C.P. 2327(4) ("At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene . . . if the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action"). They have not yet taken this step, and Appellants cannot act as their litigation proxies. Even if the law permitted Appellants to raise their spouses' and law partners' claims, Appellants waived this argument by failing to raise it during trial court proceedings. The first time that Appellants argued that their spouses' and law partners' privacy rights were infringed was in their Rule 1925 statement during this appeal. Appellants cannot raise issues for the first time in a Rule 1925(b) statement. ***Commonwealth v. Coleman***, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived).[7]

Next, we address whether Appellants have the right to appeal the privacy issue on their own behalf under the collateral order doctrine. The collateral order doctrine is articulated in Pa.R.A.P. 313, which provides:

> **(a) General rule.--**An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> **(b) Definition.--**A collateral order is an order separable from and collateral to the main cause of action where the right involved is

---

[7] Nonetheless, since we affirm the trial court's order, as a practical matter, the privacy rights of covered spouses and partners subject to the order are protected to the same extent as those of Appellants.

too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

*Id.* To satisfy the collateral order doctrine, the appellant must demonstrate that the order "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *Linde v. Linde*, 222 A.3d 776, 783 (Pa. Super. 2019). The first prong, separability, occurs when we can address the issue surrounding the disputed order without analyzing the ultimate issue in the underlying case. *Id.* As for the second prong, importance, "it is not sufficient that the issue be important to the particular parties." *Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999). Instead, the issue "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* We must interpret the collateral order doctrine narrowly, and each of the above prongs must be clearly present for us to deem an order collateral. *Melvin v. Doe*, 836 A.2d 42, 47 (Pa. 2003).

"[T]he question of whether the collateral order doctrine has been met is jurisdictional in nature." *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018). "Where an order satisfies Rule 313's three-pronged test, an appellate court may exercise jurisdiction even though the order is not final." *Id.* at 857. "If the test is not met, [] and in the absence of another exception to the final order rule, there is no jurisdiction to consider an appeal of such an order." *Id.*

Appellants satisfy all three prongs of the collateral order doctrine. They satisfy the first prong, separability, because it is possible to address whether Appellants' financial records are discoverable without analyzing the merits of Appellees' actions against Appellants under the Dragonetti Act or for tortious interference with contract. *J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa. Super. 2004) (in personal injury action, defendant's expert medical witness appealed order requiring production of all 1099 tax forms from 1999 to 2002 from any insurance company or attorney; held that admissibility of 1099 forms "may be addressed without analyzing [defendant's] alleged negligence in the automobile accident").

Appellants fulfill the second prong, importance, because they have a significant privacy interest in their tax returns. *Dougherty v. Heller*, 138 A.3d 611, 629 n.10 (citing *Cooper v. Schoffstall*, 905 A.2d 482, 485 n.3 (Pa. 2006) (individuals have "privacy interest in information contained in federal tax returns. . . . Such information is made confidential per federal statute"); *J.S.*, 860 A.2d at 1117 (defense witness's privacy interest in information on federal 1099 tax forms raised "sufficiently important public policy concern" for purposes of collateral order doctrine). Further, Appellants have a privacy interest in their bank records and net worth documents. *Merithew v. Valentukonis*, 869 A.2d 1040, 1043 (Pa. Super. 2005), *abrogated on other grounds*, *Rae v. Pennsylvania Funeral Directors Association*, 977 A.2d

1121 (Pa. 2009)[8] (discovery order compelling defendant to disclosure her complete financial worth implicated her privacy interest in her financial information and raised sufficiently important public policy concern to satisfy second prong of collateral order doctrine).

Appellants meet the third prong, irreparable harm, because their privacy rights in their financial documents will be irreparably lost if review of this question "is postponed until final judgment in this case." *Linde*, 222 A.3d at 783; *Merithew*, 869 A.2d at 1043 (in motor vehicle accident case, defendant's privacy interest in her financial worth would be irreparably lost if she complied with discovery order to disclose financial information instead of taking collateral order appeal).

Appellees argue that even if Appellants satisfy the collateral order doctrine, we must quash Appellants' appeal as untimely because (1) Appellants failed to appeal within thirty days after entry of the August 7, 2019 order granting Appellees' motion to compel, and (2) Appellants' motion for

---

[8] *Merithew* applied a "whole order approach" to the collateral order doctrine by ruling, in effect, that if one issue in an order satisfies the collateral order doctrine, the entire order was subject to review. *Id.*, 869 A.2d at 1044 (determining whether information sought in discovery order was relevant, an issue that is not "separable from and collateral to the main cause of action"). In *Rae*, our Supreme Court held that this "whole order approach" was incorrect, and that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Id.*, 977 A.2d at 1130. *Rae* thus abrogated *Merithew* to the extent that *Merithew* applied the "whole order approach" to the collateral order doctrine.

reconsideration of this order did not toll the time for appealing, since the trial court did not grant the motion within thirty days after August 7, 2019. We disagree.

In *Estate of Petro*, 694 A.2d 627 (Pa. Super. 1997), the administrator of an estate filed a petition demanding that the decedent's daughters return certain assets to the estate. On September 9, 1994, the Orphans' Court denied the petition, and on July 10, 1995, the court denied the administrator's exceptions. The administrator filed a motion for new trial *nunc pro tunc*, prompting the court to enter an order staying the entry of final judgment pending receipt of evidence on the motion. On March 11, 1996, the court denied the motion for new trial, and on March 29, 1996, the court entered judgment. The administrator appealed. This Court held that the appeal was timely even though the administrator appealed more than thirty days after the July 10, 1995 order denying his exceptions. We emphasized that the administrator's petition seeking return of assets was "collateral to the main cause of action here, the administration of the assets inventoried in the estate." *Id.*, 694 A.2d at 630. All of the orders between September 1994 and March 1996, we continued, related to this collateral matter. *Id.* There is no rule, however, that a collateral order *must* be appealed within thirty days after its entry; Rule 313(a) only provides that an appeal "*may*" be taken from

a collateral order.[9] *Id.* at 631. Since there were multiple orders concerning this collateral issue, "an appeal of this issue was properly taken when the collateral matter (the inclusion of assets in [the] estate) was finally determined," *i.e.*, following entry of judgment on March 29, 1996. *Id.* at 631-32.

Several years after *Petro*, in *Jones v. Faust*, 852 A.2d 1201 (Pa. Super. 2004), a motor vehicle accident case, the court entered (1) an order on May 5, 2003 requiring the defendant's expert witness to produce medical records of other patients he treated (with their names redacted), (2) an order on July 14, 2003 directing the expert's company to pay a fine, and (3) an order dated July 28, 2003 directing the expert and his company to pay fines for failing to comply with prior orders. On August 1, 2003, the expert appealed. Citing *Petro*, this Court held that the appeal from the May 5, 2003 order was timely.

> [T]he timeliness of appeals from collateral orders depends not upon entry of the order itself, but upon resolution of the collateral matter. And, although collateral orders may be appealed within 30 days of their entry, the substance of the collateral order is not forever precluded when an appeal is not taken within this period. As the order involved here is a discovery matter, by definition preliminary and in addition concerned with resolution of collateral issues, clearly no finality is implicated; the appeal from the May 5th Order is therefore timely, as are the appeals from the July 14th and 28th Orders.

---

[9] Rule 313(a) remains the same today as it was when this Court decided *Petro*.

*Id.*, 852 A.2d at 1203 (citations omitted). We have interpreted *Jones* to mean that "where [a] collateral matter is resolved through a series of interlocutory orders, a timely notice of appeal from the last such order will incorporate a prior order involving segments of same collateral matter." *McGrogan v. First Commonwealth Bank*, 74 A.3d 1063, 1076 n.16 (Pa. Super. 2013) (citing *Jones*).

In the present case, as in *Petro* and *Jones*, the trial court entered a series of interlocutory orders on a collateral matter: the August 7, 2019 order granting Appellees' motion to compel production of Appellants' financial documents, the September 9, 2019 order scheduling a hearing on Appellants' motion for reconsideration, and the October 31, 2019 order denying reconsideration. Appellants' notice of appeal on November 27, 2019 was a timely appeal from the October 31, 2019 order that incorporated the August 7, 2019 and September 9, 2019 orders involving the same collateral discovery issue.

Having held that the October 31, 2019 discovery order herein is a appealable collateral order, and that Appellants' appeal from this order is timely, we turn to the merits of the appeal.

"In reviewing the propriety of a discovery order, we determine whether the trial court committed an abuse of discretion and, to the extent that we are faced with questions of law, our scope of review is plenary." *Pasquini v. Fairmount Behavioral Health System*, 230 A.3d 1190, 1194 (Pa. Super.

2020).  The trial court entered an AEO order (1) declaring the discovery of Appellant's financial documents "confidential," (2) directing Appellees' counsel not to copy or utilize this discovery or to disclose it anyone, including Appellees, without court approval, even after termination of this litigation, and (3) directing Appellees' counsel to destroy this discovery after termination of litigation.    Courts have employed AEO orders in a variety of cases. "[D]isclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets.  . . . The purpose of this form of limited disclosure is to prevent a *party* from viewing the sensitive information while nevertheless allowing the party's *lawyers* to litigate on the basis of that information."  ***In re City of New York***, 607 F.3d 923, 935-36 (2d Cir. 2010) (emphasis in original).  AEO orders are commonplace in trade secret litigation, including trade secret cases in Pennsylvania.  ***CLL Academy, Inc. v. Academy House Council***, 231 A.3d 884 (Pa. Super. 2020) (collecting AEO orders in Allegheny County trade secret cases); ***see generally***  Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2041 n.11 (3d ed.) (collecting dozens of cases).  In addition, courts have entered AEO orders to safeguard parties' privacy interests.  ***See Simpson v. Univ. of Colo.***, 220 F.R.D. 354, 361 (D. Colo. 2004) (in sexual harassment case, some diary entries ordered disclosed, but for attorneys' eyes only); ***Sanchez v. Zabihi***, 166 F.R.D. 500, 503 (D.N.M. 1996) (in sexual harassment case, interrogatory about prior romantic or sexual advances narrowed to three years with response for attorneys' eyes

only); ***Rossini v. Ogilvy & Mather, Inc.***, 798 F.2d 590, 601 (2d Cir. 1986) (in class action against employer for sexual discrimination, AEO order appears to have been a proper attempt to balance plaintiffs' desire for full disclosure of relevant information against defendant's desire to preserve privacy of its employees). Further, we have found at least one court that has imposed an AEO order when the plaintiff sought discovery relating to their claim for punitive damages. ***Breault v Friedli***, 610 S.W.2d 134, 140 (Tenn. App. 1980) (in action alleging fraud in sale of liquor store business, court properly limited disclosure of defendants' financial information to counsel only).

In this case, the trial court properly concluded that Appellees had the right to punitive damages discovery under Rule 4003.7, based on evidence that Appellants intentionally and wantonly filed a second federal lawsuit despite full knowledge of the prior settlement agreement between Appellees and Kemble. Appellants insist that disclosure of their financial documents will rob them of their privacy interest in these documents, and that it is impossible to undo this harm. The right to privacy, however, "is not an unqualified one; it must be balanced against weighty competing private and state interests." ***Jones***, 852 A.2d at 1207. Courts can and should craft discovery orders that strike a proper balance between Appellants' privacy interests and the rights of other parties. Appellees have the right to seek punitive damages in their Dragonetti action. ***See*** 42 Pa.C.S.A. § 8353(6) (plaintiff in Dragonetti action may obtain punitive damages "according to law in appropriate cases"). The

AEO order herein accommodates Appellants' privacy rights by prohibiting Appellees themselves from viewing Appellants' financial information, limiting access to these documents to Appellees' attorneys, and requiring Appellees' attorneys to destroy these documents at the conclusion of litigation. The AEO order effectuates Appellees' right to punitive damages discovery by providing access to Appellants' financial records while also "setting forth appropriate restrictions as to . . . the dissemination of the material discovered." Pa.R.C.P. 4003.7. The AEO order, in short, is a proper exercise of discretion because it properly balances the parties' competing interests.[10]

For the foregoing reasons, the October 31, 2019 order was appealable under the collateral order doctrine, and Appellants' appeal from this order was timely. On the merits, we conclude that the trial court properly exercised its discretion by ordering AEO production of Appellants' financial documents.

_____

[10] We know of only one other Pennsylvania appellate decision concerning AEO orders—our ruling earlier this year in **CLL Academy** that an AEO order was an improper device for resolving the defendant's attorney-client privilege and work product doctrine objections to the plaintiffs' discovery requests. Privilege logs, **CLL Academy** said, are the primary method for determining whether privileges apply, and *in camera* review is available when privilege logs do not permit meaningful analysis. **Id.**, 231 A.3d at 889. The AEO order was "wholly inconsistent with the *in camera* review sanctioned by our rules of civil procedure for evaluating claims of privilege." **Id.** at 890. We observed that "disclosure [in trade secret cases] of confidential commercial information to attorneys who are not in a position to use it to achieve a competitive edge is quite different from the disclosure of an attorney's mental impressions and strategies to opposing counsel in ongoing litigation." **Id.**

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2020