J-S15019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER P. GROVANZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSICA GROVANZ | : | |
| | : | |
| Appellant | : | No. 1320 WDA 2024 |

Appeal from the Order Entered September 17, 2024
In the Court of Common Pleas of Elk County
Domestic Relations at No(s):  2022-00257,
PACSES No. 654115058

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:               **FILED: August 21, 2025**

Jessica Grovanz ("Mother"), appeals from the order finding her in civil contempt[1] of court for failing to comply with a child support order and a work search order.[2]  Mother argues the trial court erred in imposing a $2,900.00 purge condition without first determining whether she had the ability to pay at the time she was found in contempt of court.  After careful review, we

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In its Rule 1925(a) opinion, the trial court refers to the proceeding as a "hybrid" civil and criminal contempt proceeding.  *See* Trial Court Opinion, 11/15/24, at 4.  There is no such entity; however, because our review of the record demonstrates that this was a civil contempt proceeding and that Mother was afforded all process she was entitled to at such a proceeding, the trial court's mislabeling of the proceedings does not impact our decision.

[2] We note with disapproval that the petitioner in this case, Elk-Cameron County Domestic Relations did not file a brief.

conclude Mother failed to preserve this issue for appeal and, therefore, we are constrained to dismiss it.

We take the underlying facts and procedural history in this matter from the trial court opinion and our review of the certified record. Mother has been subject to a child support order since 2015. *See* N.T., 9/6/24, at 7. The court last modified the child support amount in February 2022 and directed Mother to pay $500.00 per month in child support and an additional $50.00 in arrears. *See* Trial Court Opinion, 11/15/24, at 1; N.T., 9/6/24, at 3. Mother has a shaky employment history and a lengthy history of failing to pay child support resulting in seven contempt proceedings (excluding the instant matter), which resulted in six convictions for contempt of court, the issuance of several bench warrants, and the suspension of her driver's license. *See* Mother's Brief at 7; N.T., 9/6/24, at 3-4.

In early May 2024, the trial court issued a work search order, which required Mother to apply for five jobs per week and to report her efforts to domestic relations once per week. Mother failed to comply. *See* Trial Court Opinion, 11/15/24, at 1. Mother last paid child support in the amount of $165.70 in late March 2024; between January and August 2024, Mother paid approximately twenty-six percent of her support obligation. *See* N.T., 9/6/24, at 3-4.

Following the filing of a support enforcement petition, the trial court held a contempt hearing in early September 2024, at which Mother appeared

*pro se*. When asked if she wanted to present any evidence at the hearing, Mother declined. **See** N.T., 9/6/24, at 5. Mother admitted she was unemployed but claimed she had "applied to every job under the moon." **Id**. Mother did not provide any documentary proof of this contention. **See id**. Mother then averred she was in the process of "getting" a home in a larger town with more job possibilities. **See id**. at 5-6. When questioned by the trial court about how she could afford to buy a house, Mother clarified she was renting the house with a friend but did not explain how she was going to pay her share of the rent and expenses. **See id**. at 5-6. Mother testified she had the immediate ability to pay $500.00 of support and was also planning on paying the ninety-dollar fee to get her driver's license restored. **See id**. at 6.

The trial court held Mother in contempt, specifically finding she had the present ability to comply with the support order but willfully chose not to do so. **See id**. at 7. The court stated Mother could purge herself of the finding of contempt by paying $500.00 that morning and $2,900.00 by September 17, 2024. **See id**. at 7-8. The court concluded on the record Mother had the present ability to pay this money both based on her testimony at the hearing and her history of payment after previously being found in contempt. **See id**. at 8.

As Mother had not complied with the purge conditions, a second hearing, at which court-appointed counsel represented Mother, took place on September 17, 2024. Robin Overturf ("Overturf"), an enforcement officer

from domestic relations, testified Mother had paid $500.00 on the date of the last hearing but had only reported to domestic relations once during the two-week period, and stated she applied for two jobs. *See* N.T., 9/17/24, at 3-4. On cross-examination, Overturf rechecked the system and confirmed Mother had paid another $500.00 the night before the hearing. *See id*. at 6-7.

On direct examination, Mother claimed she had applied for several jobs in the last two weeks and had an interview for one that day; however, Mother failed to provide any proof regarding her job searches. *See id*. at 8-9. Mother admitted she failed to report her job applications, as required by court order, to domestic relations. *See id*. at 9. When asked if she had any reason for failing to report, she replied, "No." *Id*. Mother claimed she could only obtain $500.00 of the $2,900.00 ordered by the judge; Mother did not specify how she got the money other than she had help and provided no proof of her finances. *See id*. at 10. Counsel argued the court should recess the matter for thirty days because of Mother's progress in looking for a job and counsel's belief she would be able to pay the remaining monies owed during that period. *See id*. at 12. The trial court declined the request, noting Mother owed close to $6,400.00 in support, had a lengthy history of prior contempt proceedings, continued her failure to comply with the job search order in the two weeks between hearings, and that there was nothing physically preventing Mother from working. *See id*. at 13-16. The Court specifically found Mother had the present ability to pay. *See id*. at 16. The Court ordered Mother to serve up

to six months in jail with immediate release when she paid the remaining $2,400.00.[3] **See id**. at 17. The instant, timely appeal followed.[4]

On appeal, Mother raises the following issue for our review:

> Whether the [trial court] erred when it imposed on [Mother] a period of incarceration of six months and set bail at $2,400.00 following a finding of civil contempt, where the record does not prove beyond a reasonable doubt that [Mother] had the present ability to comply[?]

Mother's Brief at 6.

Our scope of review for a contempt order is limited: "[w]e will reverse only upon a showing of an abuse of discretion." **Childress v. Bogosian**, 12 A.3d 448, 465 (Pa. Super. 2011). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." **Id**. (citation omitted). Moreover, "[t]he purpose of a civil contempt order is to coerce the contemnor to comply with a court order." **Id**. (citation omitted).

Section 4345 governs contempt for noncompliance with child support orders and provides:

> **(a) General rule.**--A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for failure of obligor to appear), may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
>> (1) Imprisonment for a period not to exceed six months.

---

[3] Mother paid the remaining $2,400.00 in November 2024 and was then released from incarceration. **See** Mother's Brief at 9.

[4] Mother and the trial court complied with Pa.R.A.P. 1925.

(2) A fine not to exceed $1,000.

(3) Probation for a period not to exceed one year.

**(b) Condition for release.**--An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S.A. § 4345.

To establish civil contempt, "the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent." **Thomas v. Thomas**, 194 A.3d 220, 226 (Pa. Super. 2018).

Therefore, a party must have violated a court order to be found in civil contempt. **See Hyle v Hyle**, 868 A.2d 601, 604 (Pa. Super. 2005). "Accordingly, the complaining party must show, by a preponderance of the evidence, that a party violated a court order. **The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears.**" **Id**. (internal citations omitted, emphasis added).

"A showing of non-compliance with a court order is insufficient in itself to prove contempt. If the alleged contemnor **is unable to perform and has in good faith attempted to comply with the court order**, contempt is not proven." **Wetzel v. Suchanek**, 541 A.2d 761, 762 (Pa. Super. 1988) (some emphasis in original some added; citation omitted). The "**present inability**

***to comply is an affirmative defense which must be proved by the alleged contemnor***.” ***Barrett v. Barrett***, 368 A.2d 616, 621 (Pa. 1977) (emphasis added).

> Lastly:
>
> When the alleged contemnor presents evidence that he is presently unable to comply[,] the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced ***beyond a reasonable doubt***, from the totality of the evidence before it, the contemnor has the present ability to comply.

***Hyle***, 868 A.2d at 604-05 (citation omitted, emphasis in original).

Mother argues “the record does not prove beyond a reasonable doubt that . . . [she] had the present ability to comply with a purge condition of paying $2,400.00.” Mother's Brief at 19; ***see id***. at 19-21. However, as noted above, inability to pay is an ***affirmative defense***. ***See Barrett***, 368 A.2d at 621. Thus, it was Mother's duty to raise the issue and provide proof of her inability to pay. ***See Hyle***, 868 A.2d at 604. Mother does not cite to, and we have been unable to locate, any place in the record where she raised the defense. ***See*** Mother's Brief at 19-21; N.T., 9/6/24, at 1-12; N.T., 9/17/24, at 1-18. In her statement of raising or preservation of issues, Mother does not state where she raised her claim below but instead notes that she was not required to file a post-trial motion in this matter. ***See*** Mother's Brief at 13.

As a general matter,

issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal.

Indeed, issue preservation is foundational to proper appellate review. This procedural prerequisite to appellate review ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity. It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation.

*Swatt v. Nottingham Village*, --- A.3d ---, 2025 WL 1821998, at *9 (Pa. Super. July 2, 2025) (*en banc*) (quotation marks and citations omitted).

Mother raised the issue of inability to pay for the first time in her Rule 1925(b) statement. This is not permissible. *See Cabot Oil and Gas Corp. v. Speer*, 241 A.3d 1191, 1196 (Pa. Super. 2020) (recognizing an issue cannot be raised for the first time in a Rule 1925(b) statement). Moreover, new legal theories may not be raised for the first time on appeal. *See* Pa.R.A.P. 302(a). Thus, we are constrained to find Mother waived her only issue on appeal.

Even if not waived, Mother's claim lacks merit. As discussed, inability to pay is an affirmative defense, thus it was Mother's burden to present evidence to support her claim she was unable to pay. *See Hyle*, 868 A.2d at 604; *L.M.A.W. v. N.R.C.*, 248 A.3d 475 (Pa. Super. 2021) (unpublished memorandum, at *4-*5) (rejecting claim of inability to pay where contemnor did not present any evidence supporting his claim, turned down employment because his wage garnishment was too high, and was collecting

unemployment).[5] Mother did not do so. She did not present any documentary evidence at either hearing regarding her finances or any proof of her contention that she was actively seeking work. Mother's testimony regarding her finances was brief and evasive; Mother failed to explain her source of income, how she was planning to pay for her move to a larger town, and where the money came from for the $500.00 she paid on September 4, 2024. The trial court specifically found at both hearings that Mother had the present ability to pay, noting her history of coming up with funds when faced with contempt proceedings and specifically discussing her questionable credibility. *See* Trial Court Opinion, 11/15/24, at 5-6. Thus, even if Mother had preserved her claim regarding inability to pay, it would not merit relief. *See I.D. v. K.O.J.*, 236 A.3d 406 (Pa. Super. 2020) (unpublished memorandum, at *5) (holding trial court erred in finding contemnor had the present ability to pay where she presented pay stubs from her employer and detailed testimony of all her monthly expenses and how she was paying for them, which demonstrated she was unable to pay both child support and the purge condition).

Appeal dismissed.

---

[5] *See* Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/21/2025