J-A11037-26

2026 PA Super 113

| GREGORY STAPP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENDA STAPP | : | No. 683 MDA 2025 |

Appeal from the Order Entered April 30, 2025
In the Court of Common Pleas of Lycoming County
Civil Division at No. FC-2023-20486-DI

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:

In this divorce action, Gregory Stapp, Esquire (Husband), appearing *pro se*,[1] appeals from the April 30, 2025 order denying reconsideration of the March 21, 2025 order compelling his responses to the discovery requested by Brenda Stapp (Wife).  We affirm.

*CASE HISTORY*

Husband is a self-employed personal injury lawyer at Stapp Law, LLC. He and Wife were married in April 2014.  Husband states that Wife "worked with [him] from the formation of Stapp Law, LLC in March of 2016 until

---

[1] Husband was represented by Melody Protasio, Esquire, from the inception of this case on May 24, 2023, until March 1, 2024.  On March 1, 2024, Attorney Protasio withdrew her appearance, and Bradley Hillman, Esquire entered his appearance for Husband.  On March 28, 2025, Attorney Hillman withdrew his appearance and Teresa C. Marino, Esquire entered her appearance for Husband.  Attorney Marino withdrew her appearance on July 2, 2025, when Husband entered his appearance as a self-represented party pursuant to Pa.R.C.P. 1930.8.

January 31, 2023." Husband's Brief at 6. Wife agrees that she "worked at Stapp Law firm as [Husband's] secretary from 2016, when the firm was started, … to 2023 when they began having marital issues." Wife's Brief at 6.

On May 24, 2023, Husband filed a divorce complaint seeking equitable distribution. On June 15, 2023, Wife filed an answer with counterclaims for equitable distribution, attorney's fees and costs, and alimony.

On October 12, 2023, Wife filed a motion to compel Husband's responses to discovery. Wife averred that Husband had not responded to the first set of interrogatories and request for production of documents she sent him on April 30, 2023. Motion to Compel Discovery, 10/12/23, at ¶¶ 2, 4. Wife claimed that without "the information requested, this case is unable to move forward." *Id.* at ¶ 6.

The trial court summarized the ensuing procedural history:

On November 2nd, 2023, th[e trial c]ourt issued an order compelling [Husband] to provide [Wife] with full and complete answers to [her] interrogatories and request for documents. On February 14th, 2024, [Wife] moved for sanctions against [Husband] because he had failed to provide the information requested by [Wife]. This court issued a rule to show cause on April 3rd, 2024, ordering [Husband] to file an answer as to why [Wife] should not be entitled to the relief sought. An answer was filed on April 17th, 2024.

On May 2nd, 2024, upon request of [Husband,] a Master was appointed with respect to the Equitable Distribution claims. On October 18th, 2024[, Wife] filed a motion for special relief requesting that [Husband] provide answers to the prior discovery request sent on September 12th, 2024. After a conference on October 29th, 2024, the court ordered that all discovery be completed within 60 days, including all documents requested by [Wife]. On January 21st, 2025, after a discovery conference[,] the

parties came to an agreement as to a portion of the outstanding discovery requests, but a conference was scheduled to resolve the remaining issues. On March 2[1st], 2025, after a discovery conference, the court ordered exactly which documents [Husband] should provide to [Wife] within 45 days of that date.

[Husband] filed a motion for reconsideration of this [c]ourt's March 2[1st], 2025 order. That request was granted in part to make a correction as to the scheduling order, but otherwise denied on April [30th,] 2025. After denial of the Motion for Reconsideration[, Husband] filed a notice of appeal on May 23rd, 2025. A concise statement order was issued on June 2nd, 2025, and [Husband] filed [his concise] statement on June 19th, 2025.

Trial Court Opinion (TCO), 11/17/25, at 2.

Husband specifically assails the discoverability of his IOLTA account.[2]

The order pertaining to Husband's IOLTA account states:

1. As to [Wife's] Request for Production of Business Documents:

a. Number 1, [Husband] shall provide the 2024 federal and state tax return once filed.

b. Number 10, [Husband] shall provide the statements for all financial accounts, including the IOLTA accounts; however, all client identifiers shall be redacted.

c. Number 12, [Husband] shall provide a list of all settlements of contingent fee cases by date received, and the attorney fees realized as to each from 2012 [*sic*] to present; however, all client identifiers or any opposite settling party information and identifiers may not be provided to protect confidentiality, and to comply with, confidentiality agreements.

_____

[2] IOLTA is an acronym for an Interest on Lawyer's Trust Account. When a lawyer is "in possession of funds or property in which two or more persons, one of whom may be the lawyer, claim an interest, the funds or property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the funds or property … as to which the interests are not in dispute." Pa.R.P.C. 1.15(f).

d. Number 14, there shall be provided the date and year of any case-sharing by transfer to another attorney and law firm; and, if settled the amount received by [Husband] with the date thereof. No attorney information shall be provided.

e. Number 15, there shall be provided all tax returns for the years 2016-2020, as well as 2024 once filed. There shall be no direct identifiers provided.

Order, 3/21/25, at 1-2.[3]

On appeal, Husband presents the following questions:

I. WHETHER AN ATTORNEY'S IOLTA ACCOUNT IS SUBJECT TO DISCOVERY IN A DIVORCE ACTION?

II. WHETHER A TRIAL COURT CAN ORDER DISCLOSURE OF A LAWYER'S IOLTA ACCOUNT IN LIGHT OF PENNSYLVANIA RULES OF PROFESSIONAL RESPONSIBILITY NO. 1.4 AND 1.6 RELATING TO CLIENT CONFIDENTIALITY?

III. WHETHER THE TRIAL COURT OR ANY COURT HAS THE AUTHORITY TO FORCE A CLIENT OR CLIENTS WHO ARE NOT PARTY TO THE DIVORCE ACTION TO RELEASE THEIR CONFIDENTIAL INFORMATION?

IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUFFICIENTLY EXPLAIN THE REASONING BEHIND FORCING [HUSBAND] TO REVEAL CONFIDENTIAL CLIENT INFORMATION?

V. WHETHER THE TRIAL COURT ERRED IN REVIEWING THE PENNSYLVANIA BAR ASSOCIATION ETHICS COMMITTEE OPINION LETTER AND THEN ORDERING [HUSBAND] TO PROVIDE CONFIDENTIAL CLIENT INFORMATION WITHOUT ACKNOWLEDGING THE CLIENT'S RIGHT TO CONFIDENTIALITY?

VI. WHETHER THE TRIAL COURT ERRED IN ITS REASONING AS TO WHY IT ORDERED [HUSBAND] TO PROVIDE CONFIDENTIAL CLIENT INFORMATION WHEN IT STATED, "THE 'INFORMAL OPINION' DID NOT CONSIDER THE PARTICULAR CIRCUMSTANCES PRESENT HERE EMBRACED BY THE COURT ORDER AFTER EXTENSIVE DISCUSSIONS OF PROPER DISCOVERY

---

[3] The order is dated March 20, 2025, but was docketed the following day.

TO WHICH NEITHER [HUSBAND] OR HIS PRESENT ATTORNEY PARTICIPATED"?

Husband's Brief at 5.

*APPEALABILITY*

Husband did not appeal from the March 21, 2025 discovery order. Rather, he appeals from the April 30, 2025 order which denied his request for reconsideration of the March 21, 2025 order. **See** Pa.R.A.P. 903(a) (requiring that an appeal be filed within 30 days after the entry of an order).

In his docketing statement, Husband acknowledged that the April 30, 2025 order was not a final order. Superior Court Docketing Statement, 7/11/25, at 1. Husband checked "Yes" to the question asking if the April 30, 2025 order was interlocutory as of right under Pa.R.A.P. 311, and cited subsections 311(a)(4)(i) (involving injunctions in divorce actions), and 311(a)(8) (involving "other cases" where an order "is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties."). Husband also indicated that the order was appealable as a collateral order under Pa.R.A.P. 313.

On July 18, 2025, this Court issued a rule to show cause to Husband. We observed "it is long settled that orders denying motions for reconsideration are not appealable." Order, 7/18/25, at 2 (citing **Huntington Nat. Bank v. K-Cor, Inc.**, 107 A.3d 783, 787 (Pa. Super. 2014)). We also noted that neither the March 21, 2025 or April 30, 2025 orders appeared to be final. **See** Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and

of all parties); ***Fried v. Fried***, 501 A.2d 211 (Pa. 1985) (issues in a divorce action are reviewable after entry of a divorce decree and resolution of all economic claims)).  Therefore, we ordered Husband to explain why this appeal should not be quashed.

Husband filed a response asserting that the April 30, 2025 order was appealable: 1) as a collateral order under Pa.R.A.P. 313; 2) as an interlocutory order as of right under Pa.R.A.P. 311(a)(4)(i) and 311(a)(8); and 3) because "the issues raised in this appeal were not raised before the trial court before the March 21, 2025 order."  ***See*** Response to Rule to Show Cause, 7/28/25, at ii.  By *per curiam* order entered August 21, 2025, this Court referred the appealability issue to this merits panel and discharged the rule to show cause. After further review, we conclude that the April 30, 2025 order is an appealable collateral order.

As indicated above, an order denying reconsideration is usually not appealable.  ***See Huntington Nat. Bank, supra***.  Also, discovery orders are typically "deemed interlocutory and not immediately appealable, because they do not dispose of the litigation."  ***McIlmail v. Archdiocese of Phila.***, 189 A.3d 1100, 1104 (Pa. Super. 2018).  However, an exception exists when an appeal is taken from a collateral order.  Although Husband did not cite ***Cabot Oil & Gas Corp. v. Speer***, 241 A.3d 1191 (Pa. Super. 2020) (***Cabot Oil***) in his Response to Rule to Show Cause or in his Brief, we find it to be dispositive of the appealability issue.

In **Cabot Oil**, the plaintiffs were corporations which sued the defendants — attorneys and their law firms — for wrongful use of civil proceedings under the Dragonetti Act.[4]  The plaintiffs sought the defendants' financial records to ascertain the defendants' net worth, which was relevant to the plaintiffs' claim for punitive damages.  In response to the plaintiffs' request, the trial court entered an order compelling the defendants to produce income statements, profit/loss statements, tax returns, and other financial documents.  The defendants sought reconsideration of the discovery order, and after the trial court denied the motion for reconsideration, the defendants appealed.  The defendants argued that the order denying reconsideration "violate[d] their privacy rights and the corresponding rights of their spouses and law partners by requiring production of tax returns, bank records and net worth documents from 2013 onward."  *Id.* at 1195-96 (footnote omitted).  Although the plaintiffs argued that the appeal should be quashed as untimely, we held that the order denying reconsideration of the discovery order was an appealable collateral order.  *See id.* at 1198 (stating there "is no rule, however, that a collateral order *must* be appealed within thirty days after its entry; Rule 313(a) only provides that an appeal '*may*' be taken from a collateral order.") (emphasis in original).

"A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review

---

[4] 42 Pa.C.S. §§ 8351-8354.

and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."  Pa.R.A.P. 313(b).  We explained:

> The first prong, separability, occurs when we can address the issue surrounding the disputed order without analyzing the ultimate issue in the underlying case.  As for the second prong, importance, "it is not sufficient that the issue be important to the particular parties."  Instead, the issue "must involve rights deeply rooted in public policy going beyond the particular litigation at hand."  We must interpret the collateral order doctrine narrowly, and each of the above prongs must be clearly present for us to deem an order collateral.
>
> "[T]he question of whether the collateral order doctrine has been met is jurisdictional in nature." "Where an order satisfies Rule 313's three-pronged test, an appellate court may exercise jurisdiction even though the order is not final."

*Cabot Oil*, 241 A.3d at 1196–97 (citations omitted).  We further observed:

> [T]he timeliness of appeals from collateral orders depends not upon entry of the order itself, but upon resolution of the collateral matter.  And, although collateral orders may be appealed within 30 days of their entry, the substance of the collateral order is not forever precluded when an appeal is not taken within this period.  As the order involved here is a discovery matter, by definition preliminary and in addition concerned with resolution of collateral issues, clearly no finality is implicated.

*Id.* at 1198 (citation omitted).

In *Cabot Oil*, we concluded that the discoverability of the defendants' financial records presented a separate issue from the plaintiffs' claim involving the Dragonetti Act; that the defendants had an important privacy interest in their financial records; and, given the privacy interests, irreparable harm would occur if review was postponed.  *Id*. at 1197.  Consistent with *Cabot*

*Oil*, we conclude that Husband is appealing from a collateral order. The issue of the discoverability of the IOLTA account is separate from the parties' equitable distribution claims; Husband has an important interest in maintaining the privacy of the IOLTA account which involves policy beyond the parties' divorce litigation; and the claim to privacy would be irreparably lost if review is postponed. **See** Pa.R.A.P. 313(b). Thus, we consider the merits of the appeal.

*THE DISCOVERY ORDER*

"Discovery orders are subject to an abuse of discretion standard of review. A trial court may abuse its discretion by making a ruling that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." **King v. Kappa Sigma Fraternity**, 331 A.3d 695, 699 (Pa. Super. 2025) (citations omitted). This Court has recognized that "the right to privacy ... is not an unqualified one; it must be balanced against weighty competing private and state interests." **Cabot Oil**, 241 A.3d at 1200 (citation omitted). Consequently, a trial court "can and should craft discovery orders that strike a proper balance between [a party's] privacy interests and the rights of other parties." **Id.**

The Pennsylvania Rules of Civil Procedure provide for discovery "in accordance with Pa.R.C.P. Nos. 4001[-]4025 in alimony, equitable distribution, counsel fee and expense, and complex support proceedings." Pa.R.C.P. 1930.5(b). Pennsylvania Rule of Civil Procedure 4003.1 defines the

scope of discovery as "any matter not privileged, which is relevant to the subject matter involved in the pending action."

*The Pennsylvania Association for Justice*

Before we consider Husband's argument, we address the advocacy of the Pennsylvania Association for Justice (PAJ).[5]  Unlike Husband, the PAJ believes "IOLTA account details may be subject to discovery in cases involving equitable distribution or alimony."  PAJ's Brief at 11.  However, the PAJ states that such discovery "raise[s] concerns about client confidentiality and fiduciary duties."  *Id.*  The PAJ claims repeatedly that the trial court erred "by stating that client confidentiality does not apply to the law firm's employees."  *Id.* at 1; *see also id.* at 4 (same).  The PAJ asserts the "trial court's statement that client identities were not confidential to [W]ife if she was privy to them at the time constitutes a fundamental misreading of the Rules of Professional Conduct and must be reversed."  *Id.* at 7.  In addition, the PAJ claims "enhanced safeguards are required under Pennsylvania discovery rules" and "enhanced protocol is necessary to comply with Pennsylvania law."  *Id.* at 9-10.  The PAJ advocates for:

> 1) redacted IOLTA statements … limited to account-level balances and aggregate deposits/withdrawals, with removal of client

---

[5] The PAJ has filed an *amicus curiae* brief but did not appear at oral argument. The PAJ describes itself as "a nonprofit organization with over 2,000 members of the Commonwealth of Pennsylvania's trial bar."  PAJ's Brief at 1.  The PAJ says that it "promote[s] the rights of individual citizens by advocating for trial by jury, full and just compensation for innocent victims, and the maintenance of a free and independent judiciary."  *Id.*

names, matter numbers, check images, and narrative descriptions;

2) a sworn declaration describing the dates and gross amounts of case-sharing or fee transfers … provided without disclosing client identities and submitted for *in camera* review; and

3) a protective order [to] restrict use of produced materials to this litigation, prohibit dissemination, require sealed filing of IOLTA-related exhibits, and mandate in-camera review for any disputed entries.

*Id.* at 10-11. The PAJ "requests that this Court reverse the trial court's statement regarding employee confidentiality obligations and remand with instructions to implement the enhanced safeguards outlined herein." *Id.* at 12. We decline the request.

It is unclear what "statement" the PAJ is attributing to the trial court in its multiple references to the trial court's "statement regarding employee confidentiality."[6] *See id.* at 1, 4, 7, 12. The PAJ does not cite, quote or otherwise identify the statement. *See* Pa.R.A.P. 2119(c) (requiring reference to the record, and providing, where "reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears").

*Husband's Argument*

_____

[6] As Husband observes, "despite the numerous motions to compel, a hearing was never held, and a record was never created for any of them." Husband's Brief at 9.

- 11 -

We consider Husband's questions together, as the crux of his argument is that he cannot be compelled "to disclose confidential client information, including but not limited to, IOLTA account information in a domestic relations case." Husband's Brief at 24. Husband maintains "the funds contained in a lawyer's IOLTA account belong to the client; and, therefore, cannot be discovered by a third party in a domestic relations case." *Id.* Husband also implies that his IOLTA account is subject to attorney-client privilege, and states that the "privilege is sacrosanct."[7] *Id.* at 14. Husband cites "the seminal case" of **Beasley v. Beasley**, which involved, *inter alia*, the valuation of a divorcing husband's "law practice, conducted as a sole proprietorship." *Id.* at 18; **Beasley v. Beasley**, 581 A.2d 545, 546 (Pa. Super. 1986) (*en banc*).

Although no divorce decree had been granted in **Beasley**, this Court considered the wife's appeal and husband's cross-appeal relating to the valuation of marital property as being from a collateral order. We found "[t]he

---

[7] Throughout his argument, Husband cites the PBA Ethics Opinion (PBA Opinion) he attached to his motion for reconsideration. The PBA Opinion was issued in response to Husband's inquiry, and states that it is an "informal opinion" which "does not address any issues of substantive law but is limited to advice based on the Pennsylvania Rules of Professional Conduct." PBA Opinion, 4/7/25, at 1-2; *id.* at 5 (stating the "opinion is advisory only and is not binding on … any other Court."). The Pennsylvania Supreme Court "has held that the Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings." **In re Adoption of M.M.H.**, 981 A.2d 261, 272 (Pa. Super. 2009) (citation omitted). This Court has reversed a trial court's order after finding that the trial court "erred when it relied upon the Pennsylvania Rules of Professional Conduct as a source for its authority." *Id.*

exceptional ingredient [was] the issue concerning the right of appraisal of a professional sole proprietorship and the possibility of irreversible harm by the intrusion into confidential records and relationships of clients." *Id.* at 549. Ultimately, we held that the appraisal of the husband's law practice, "not including confidential records, is permissible to ascertain present value and a basis for alimony." *Id.* at 557. We explained:

> The right of appraisal provides an extremely difficult issue to resolve because aside from the interests of the parties in whatever business the firm may pursue, there is the right of confidentiality and for the clients to have their personal affairs be absolutely privileged and private. On balance, it would appear that the trial judge approached this in a sensible manner. It is undeniable that he carefully considered the rights of the individual clients, … and the ability of the court to exercise control over such confidential information. … Unquestionably, lawyers cannot be carved out as a special category of professionals who are immune from evaluation as to present value, but to permit inquiry into confidential files for the purpose of evaluating contingent fees as potential earnings is inappropriate. The review by an outsider of confidential files, which can contain information which would never be revealed except to the lawyer in a confidential relationship, would have a chilling effect on that relationship which far outweighs the need to appraise those files for these purposes. With these limitations, it is believed that adequate means are provided by [the rule concerning discovery in divorce matters, Pa.R.C.P. 1930.5], for this purpose.

*Id.* at 555-56 (footnote omitted). In addition, we determined the wife was entitled to information regarding the "transfer of airplanes by [the husband] to a trust fund for his sons." *Id.* at 557. We observed that the information "would divulge both the value of the assets and particularly in regard to the airplane, which appears to have been placed in trust under questionable

circumstances, aid in determining whether that trust, in fact, is not an improper divestiture of marital property." *Id.* Thus, we held that "appraisal of property transferred into a trust is permitted without a prior determination that it is marital property." *Id.*

Similar to *Beasley*, this Court determined in *Cabot Oil* that a trial court "can and should craft discovery orders that strike a proper balance between [a party's] privacy interests and the rights of other parties." *Cabot Oil*, 241 A.3d at 1200. We affirmed the trial court's discovery order because it included an "attorneys' eyes only" (AEO) provision. *See id.* at 1194. We explained:

> The AEO order effectuates [the plaintiffs'] right to punitive damages discovery by providing access to [the defendants'] financial records while also "setting forth appropriate restrictions as to ... the dissemination of the material discovered." Pa.R.C.P. 4003.7. The AEO order, in short, is a proper exercise of discretion because it properly balances the parties' competing interests.

*Id.* at 1200 (footnote omitted).

Here, we also conclude that the trial court properly exercised its discretion by setting forth restrictions in the March 21, 2025 order. Wife notes that she learned from Husband's "initial disclosures … that there were unusually sizeable sums" in his IOLTA account. Wife's Brief at 7. She states:

> It is believed that [H]usband has more than $2 million dollars in his IOLTA account. Because of this, [Wife] has become concerned that [Husband] has been or may be shielding sizeable settlements that were received during the course of the marriage in an effort to shield them from equitable division.

*Id.*

As Wife observes, the March 21, 2025 order "is narrowly tailored in a manner that appropriately protects all confidential client information." *Id.* at 9. She states that the trial court gave Husband "free rei[]n to redact any client identifier information that he saw fit on the IOLTA statements, but still ordered him to turn the statements over given the circumstances surrounding the IOLTA account activity and the divorce." *Id.* at 7. Wife emphasizes that all client information was to be redacted to show only "monetary values," and reiterates that the order "allowed [H]usband to remove any client identifying information he saw fit." *Id.* at 23.

The trial court, like Wife, observes that the order "was clearly and carefully drawn to protect all clients from disclosure of their identities." TCO at 3. The court states that "Husband paints [with] a broad brush as to confidentiality," and notes "Wife has the ability to use discovery to obtain full financial information for a proper award in equitable distribution." *Id.* The court adds that Wife "has a notion" from working in Husband's office "as to the accuracy of Husband's representations." *Id.* In addition, the court found Husband to be dilatory. "Conduct is 'dilatory' where the record demonstrates … a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." *Cnty. of Fulton v. Sec'y of Commonwealth*, 292 A.3d 974, 1014 (Pa. 2023) (citations omitted). The trial court states:

> As shown by the history of this divorce, Husband has been dilatory. Perhaps the appeal further reflects an intent to delay resolution. By way of background, this action began after [Husband] filed his divorce complaint on May 24th, 2023. The

complaint sought a divorce based upon [23 Pa.C.S. §§] 3301(c), 3301(d), or 3301(a)(6) of the Divorce Code.[8]

TCO at 1.

Again, we discern no abuse of discretion. The trial court explained that following a conference, it granted Wife's discovery request, "in part after discussion [and] with qualification," for Wife "to ascertain [Husband's] financial statements for purposes of equitable distribution." *Id.* Rule 1930.5 provides for discovery in equitable distribution matters. "The purpose of our procedural rules is to facilitate the administration of justice, and our courts should apply them with that purpose in mind." *Huntington Nat. Bank*, 107 A.3d at 786.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/4/2026

---

[8] Section 3301(a)(6) provides for fault-based divorce when a party is an "innocent and injured spouse," while Sections 3301(c) and 3301(d) base divorce on mutual consent and irretrievable breakdown of the marriage.