J-S05009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| JEREMY FOGEL | : IN THE SUPERIOR COURT |
| | :     OF PENNSYLVANIA |
| v. | : |
| | : |
| KENNETH N. GOLDENBERG, KENNETH N. | : |
| GOLDENBERG T/A GOLDENBERG | : |
| PARTNERS, L.P., KENNETH N. | : |
| GOLDENBERG T/A GOLDENBERG | : |
| INVESTORS, L.P., TGG HAMILTON | : |
| INVESTOR, INC., AND TGG HAMILTON | : |
| CROSSINGS GENERAL LLC T/A TGG/TCH | : |
| - HAMILTON CROSSINGS ASSOCIATES, | : |
| L.P., TGG HAMILTON CROSSINGS | : |
| GENERAL, LLC T/A TGG HAMILTON | : |
| HOLDINGS ASSOCIATES, L.P., TGG | : |
| HAMILTON INVESTOR, INC., TGG | : |
| HAMILTON HOLDINGS GENERAL, LLC, | : |
| HAMILTON CROSSINGS, L.P., KENNETH | : |
| GOLDENBERG T/A GOLDENBERG | : |
| HAMILTON PARTNERS, L.P., KENNETH | : |
| GOLDENBERG T/A GOLDENBERG | : |
| HAMILTON INVESTORS, L.P., PR OXFORD | : |
| VALLEY GENERAL, LLC AND OVG | : |
| GENERAL OF PENNSYLVANIA, LLC T/A | : |
| OXFORD VALLEY ROAD ASSOCIATES, PR | : |
| OXFORD VALLEY GENERAL, LLC, OVG | : |
| GENERAL OF PENNSYLVANIA, LLC, OVG | : |
| GENERAL, INC., METROPLEX GENERAL, | : |
| INC. T/A METROPLEX WEST | : |
| ASSOCIATES, L.P., METROPLEX | : |
| GENERAL, INC., ME GENERAL, INC., ME | : |
| GENERAL, INC. T/A METROPLEX EAST | : |
| ASSOCIATES, L.P., MW GENERAL, INC., | : |
| KENNETH N. GOLDENBERG T/A | : |
| GOLDENBERG METROPLEX EAST | : |
| PARTNERS, L.P., KENNETH N. | : |
| GOLDENBERG T/A GOLDENBERG | : |
| METROPLEX PARTNERS, L.P., KENNETH | : |
| N. GOLDENBERG T/A GOLDENBERG | : |
| METROPLEX INVESTORS, L.P., PR | : |
| METROPLEX WEST LLC, PR METROPLEX | : |
| EAST LLC, RRC GENERAL, INC., T/A RED | : |

ROSE COMMONS ASSOCIATES, L.P., RRC :
GENERAL, INC., KENNETH N. :
GOLDENBERG T/A GOLDENBERG :
LANCASTER INVESTORS, L.P., KENNETH :
N. GOLDENBERG T/A GOLDENBERG :
LANCASTER PARTNERS, L.P., PR RED :
ROSE LLC, ALMONESSON ASSOCIATES :
II, LLC, ALMONESSON ASSOCIATES, L.P., :
KENNETH N. GOLDENBERG T/A :
GOLDENBERG D II PARTNERS, L.P., :
KENNETH N. GOLDENBERG T/A :
GOLDENBERG D II INVESTORS, L.P. :
WESTMONT NORTH ASSOCIATES, I.P. :
WESTMONT NORTH GP, LLC, KENNETH N. :
GOLDENBERG T/A WESTMONT :
PARTNERS, L.P., KENNETH N. :
GOLDENBERG T/A WESTMONT :
INVESTORS, L.P., SOUTHMOORE OWNER, :
LLC, TGG HOLDINGS, LLC, HG WALNUT :
STREET LLC :
:
: No. 2574 EDA 2024
APPEAL OF: KENNETH N. GOLDENBERG :

Appeal from the Order Entered September 16, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2023-21004

BEFORE: BOWES, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.: **FILED JUNE 20, 2025**

Kenneth N. Goldenberg appeals from the order that denied his motion

for a protective order and required him to produce his personal tax returns for

use by plaintiff Jeremy Fogel, along with his attorneys and experts, in pursuing

_____

* Former Justice specially assigned to the Superior Court.

his claims against Goldenberg and numerous Goldenberg-affiliated business entities. We reverse and remand for further proceedings.

We glean the following background information from Fogel's complaint. Goldenberg is in the business of developing real estate. His standard practice was to create a single-purpose business limited partnership for each development, which in turn was owned by an entity serving as general partner, along with multiple limited partners. Fogel worked for Goldenberg from 1995 to 2001, and again from 2011 to 2019, pursuant to associate agreements which provided that, in addition to other compensation, Fogel be given a small ownership percentage of existing and future limited partnerships that held interests in various real estate projects. When a development generated revenue through income or sale, remainder distributions were to be made to the limited partners after other obligations were satisfied.

Fogel received intermittent distributions pursuant to the agreements but came to believe that he was not being fully compensated. He asked Goldenberg to see partnership agreements, tax returns, and other documents for the relevant development entities, but Goldenberg refused. Goldenberg eventually produced some financial information, but Fogel was not satisfied.

Fogel filed a complaint against Goldenberg and a bevy of entities alleged to be involved with developments in which Fogel had an interest (collectively "Defendants") seeking damages for breach of contract and conversion, as well

as orders for an accounting and a receivership. The trial court summarized the ensuing discovery proceedings as follows:

> On February 21, 2024, [Fogel] sent interrogatories and [a] request for production directed to . . . Goldenberg. [Fogel] sought information concerning [thirty-nine] separate business entities over a [thirty]-year period. [Fogel] also requested [Goldenberg]'s personal tax returns for the tax years 1994 to present.
>
> [Goldenberg] objected, arguing the information sought was beyond the scope of discovery, would cause unreasonable burden and expense, and [that Fogel[1]] lacks any partnership or membership interest in most of the entities he named. However, [Goldenberg] produced numerous partnership agreements, tax returns, balance sheets, financial statements, income statement[s], and rent rolls for six business entities.
>
> On July 8, 2024, th[e trial] court overruled [Goldenberg]'s objections and required him to respond within [twenty] days. On July 29, 2024, [Goldenberg] served additional documents, including 300 tax returns and documents for business entities. [Goldenberg] filed a motion to clarify the court's order overruling his discovery objections or, in the alternative, to enter a protective order, requesting that his personal tax returns not be included, or, in the alternative, the court enters a protective order denying [Fogel]'s access to his personal tax returns.
>
> [Fogel] filed a response in opposition, arguing that [Goldenberg] failed to provide evidence that disclosure would result in harm. [Fogel] further noted that discovery would not reflect intercompany loans, loans made directly to partners of Goldenberg, and other types of income. [Goldenberg]'s personal tax records can only verify certain financials.
>
> Th[e trial] court denied [Goldenberg]'s motion on September 16, 2024, but limited disclosure of [Goldenberg]'s personal tax returns to [Fogel] and his attorneys, advisors, accountants, and experts.

_____

[1] The trial court opinion here states "the Defendant," however we believe this to be a typographical error.

Trial Court Opinion, 10/31/24, at 2-3 (cleaned up).

Goldenberg initiated this appeal three days later. The trial court ordered him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and he timely complied.[2] Goldenberg presents one question for our review:

Did the trial court err in refusing to grant Goldenberg a protective order against producing his personal tax returns, and in ordering Goldenberg to produce his personal tax returns for the years 1995[ to ]2001 and 2011[ to ]2019, where Fogel can obtain any information he believes to be relevant to his claims from other sources, including the business tax returns and Goldenberg's Schedule K-1s that have already been produced, and where Fogel has not demonstrated any compelling need for Goldenberg's personal returns beyond conclusory assertions that information supposedly can only be obtained from these returns?

Goldenberg's brief at 3 (honorifics omitted).

Before we examine Goldenberg's challenge to the court's interlocutory discovery order, we consider whether we have jurisdiction to do so. In the docketing statement filed in this Court, Goldenberg indicated that the order, although not final, was immediately appealable pursuant to Pa.R.A.P. 313 as a collateral order. We issued a rule to show cause how the order satisfied all three prongs of the collateral order test, namely that: (1) it is "separable from and collateral to the main cause of action[;]" (2) "the right involved is too important to be denied review[;]" and (3) "the question presented is such that

_____

[2] We remind the trial court that all Rule 1925 orders must specify "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement. In addition, the judge may provide an email, facsimile, or other alternative means for the appellant to serve the Statement on the judge." Pa.R.A.P. 1925(b)(3)(iii).

if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

Goldenberg filed a response contending that: (1) the question of the discoverability of his personal tax document can be addressed without delving into the merits of Fogel's claims; (2) courts have repeatedly recognized that individuals have significant privacy interests in their tax returns; and (3) the disclosure of the documents cannot be undone if review is postponed. **See** Response to Rule to Show Cause, 11/5/24, at 4-5 (citing, *inter alia*, **Cabot Oil & Gas Corp. v. Speer**, 241 A.3d 1191, 1197–98 (Pa.Super. 2020). Given the response, we discharged the rule with the caveat that this panel may revisit the issue.

Fogel suggests that we should do just that, contending that the appeal should be quashed because the issue is not separable from his underlying claims, particularly the claim for an accounting. **See** Fogel's brief at 15. Therein, he "demanded that the Defendants (including [Goldenberg]): 'provide a full and complete accounting with regard to the assets, income, expenses, loans, payments, and distributions for each of the aforesaid real estate development projects[.]'" **Id**. at 15-16. Therefore, Fogel maintains, the question of whether Goldenberg's personal tax returns are discoverable is inextricably intertwined with the causes of action. **Id**. at 18-19.

Goldenberg counters that his personal tax returns are not the subject of any of Fogel's causes of action. Rather, "Fogel's claim is simply that he

supposedly is owed certain payments, and he believes that information about those payments may be contained in the tax returns." Goldenberg's reply brief at 3.

We agree with Goldenberg. Fogel's underlying claims all relate to money and financial records which he believes he is entitled to receive from the operation of the real estate development projects. *See* Complaint at 14-17. Even his accounting claim states no right to information about Goldenberg's personal wealth, but instead about money flowing in and out of the business entities. *Id*. at 17. The fact that information in Goldenberg's personal returns may assist Fogel in litigating his claims does not *ipso facto* make the returns inseparable from the substantive causes of action. Rather, we can decide whether the personal tax returns are discoverable without addressing the merits of Fogel's claims for breach of contract, conversion, receivership, or accounting. Consequently, we agree that the order in question was immediately appealable as a collateral order pursuant to Pa.R.A.P. 313. *See* *Speer*, 241 A.3d at 1197–98 (concluding that order mandating disclosure of tax returns was an appealable collateral order).

Hence, we turn our consideration to the substance of the appeal, beginning with a review of the applicable legal principles. "Discovery orders are subject to an abuse of discretion standard of review. A trial court may abuse its discretion by making a ruling that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by

partiality, prejudice, bias or ill-will." ***King v. Kappa Sigma Fraternity***, 331 A.3d 695, 699 (Pa.Super. 2025) (citations omitted).

Generally speaking, discovery is liberally permitted "to prevent surprise and unfairness and to allow a fair trial on the merits." ***Carlino E. Brandywine, L.P. v. Brandywine Vill. Associates***, 260 A.3d 179, 195 (Pa.Super. 2021) (cleaned up). As a such, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Pa.R.C.P. 4003.1. Nonetheless, "'fishing expeditions' are not to be countenanced under the guise of discovery." ***Copestakes v. Reichard-Copestakes***, 925 A.2d 874, 876 (Pa.Super. 2007) (cleaned up). Thus, "to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense," a court may grant a party's motion for a protective order to prohibit or limit the production of otherwise discoverable material "for good cause shown[.]" Pa.R.C.P. 4012(a).

As discussed, our courts have recognized that individuals have a significant right to privacy in their tax returns. ***See***, ***e.g.***, ***Dougherty v. Heller***, 138 A.3d 611, 629 n.10 (Pa. 2016) (noting that tax returns are subject to privacy rights pursuant to state law and confidentiality under a federal statute). However, "the right to privacy is not an unqualified one; it must be balanced against weighty competing private and state interests." ***Jones v. Faust***, 852 A.2d 1201, 1206 (Pa.Super. 2004) (cleaned up). Specifically,

"[c]ourts can and should craft discovery orders that strike a proper balance between [defendants'] privacy interests and the rights of other parties." ***Speer***, 241 A.3d at 1200.

In ***Speer***, for example, the plaintiff natural gas companies sued the defendant lawyers and firms for wrongful use of civil proceedings. Since punitive damages were at issue, the plaintiffs sought discovery on the wealth of the defendants, including their tax returns and other net worth information. Over the defendants' privacy objections, the court ordered their production pursuant to an attorneys' eyes only ("AEO") order that: (1) decreed the documents to be confidential; (2) directed the plaintiffs' attorneys "not to copy or utilize this discovery or to disclose it [to] anyone, including [the plaintiffs], without court approval, even after termination of this litigation[;]" and (3) required the plaintiffs' lawyers to destroy the confidential materials when the litigation concluded. ***Id***. at 1199. In reviewing the defendants' challenge to the collateral order, we observed:

> Courts have employed AEO orders in a variety of cases. Disclosure of confidential information on an [AEO] basis is a routine feature of civil litigation involving trade secrets. The purpose of this form of limited disclosure is to prevent a **party** from viewing the sensitive information while nevertheless allowing the party's **lawyers** to litigate on the basis of that information. AEO orders are commonplace in trade secret litigation, including trade secret cases in Pennsylvania. In addition, courts have entered AEO orders to safeguard parties' privacy interests. Further, we have found at least one court that has imposed an AEO order when the plaintiff sought discovery relating to their claim for punitive damages.

*Id*. (cleaned up, emphases in original). We affirmed the order, explaining as follows:

> The AEO order herein accommodates [the defendants'] privacy rights by prohibiting [the plaintiffs] themselves from viewing [the defendants'] financial information, limiting access to these documents to [the plaintiffs'] attorneys, and requiring [those] attorneys to destroy these documents at the conclusion of litigation. The AEO order effectuates [the plaintiffs'] right to punitive damages discovery by providing access to [the defendants'] financial records while also setting forth appropriate restrictions as to the dissemination of the material discovered [as required by Pa.R.C.P. 4003.7]. The AEO order, in short, is a proper exercise of discretion because it properly balances the parties' competing interests.

*Id*. at 1200 (cleaned up))

We now turn to the parties' arguments in the case *sub judice*. Goldenberg contends that the trial court's order is improper because the information Fogel desires is available from sources other than Goldenberg's personal tax returns, in particular the Defendants' tax returns and other financial documents, along with the Schedule K-1 forms documenting the amounts passed to Goldenberg by the various entities. *See* Goldenberg's brief at 15-16. He insists that the violation of his privacy rights in requiring the disclosure of his personal returns to anyone involved in the litigation is thus unwarranted. *Id*. at 17. Goldenberg further asserts that the trial court is incorrect in believing that its ruling is supported by the *Speer* decision, as it did not order the disclosure for AEO and expressly permits Fogel to see them. *Id*.

Fogel maintains that the structure of Goldenberg's "multilayered real estate entities creates a complicated series of relationships/transactions which can only be verified and understood through the disclosure and production of the documents which have legitimately been requested in this case[,]" including Goldenberg's personal tax returns. *See* Fogel's brief at 22. He avows that the previously-produced K-1 forms are insufficient because, although they disclose some distributions made to Goldenberg, "they do not reflect intercompany loans[;] loans made directly by one of the partnerships to [Goldenberg;] other types of income which [he] may have derived from the real estate partnership activities[;] and/or distributions in kind/transfers of partnership interests, shares of stock and/or LLC interests." *Id*.

Fogel claims he has "suspicions" that Defendants' documents do not fully disclose all information concerning the companies' assets, income, expenses, loans, payments, and distributions, namely that, "all of those documents were prepared by Defendants and therefore could easily have erroneous or intentionally misleading information." *Id*. at 16. Fogel professes the belief that "improper and/or inconsistent financial machinations may be demonstrated by reviewing and analyzing [Goldenberg's] personal tax returns and comparing them to the company tax returns which have been produced to date (which as yet, are still incomplete)." *Id*. at 18. Notably, Fogel repeatedly references Defendants' failure to fully comply with his discovery

- 11 -

requests, acknowledging that he still does not have all the tax returns for the companies. *Id*. at 18, 21. In sum, Fogel's position is:

> There is significant incentive for [Goldenberg] to provide limited information to Fogel, if [Goldenberg] has something to hide. Fogel is completely justified in being suspicious of the information provided to date (as well as the lack of information provided to date), given [Goldenberg]'s history of delay and obfuscation. It is far more likely that [Goldenberg] would be more hesitant to provide false or misleading information in his tax returns submitted to the Federal Government, for obvious reasons. The burden on [Goldenberg] to disclose this information is far outweighed by Fogel's need for complete and reliable financial information.

*Id*. at 17.

The trial court found no merit to Goldenberg's arguments. *See* Trial Court Opinion, 10/31/24, at 6. While acknowledging that the personal returns would not disclose any intercompany loans, the court did not find this dispositive. *Id*. at 7. Rather, it accepted Fogel's contention that he needed Goldenberg's personal returns "to verify payments made to [Goldenberg] in this complex litigation[.]" *Id*. The court opined that its order reflected "a proper balance between [Goldenberg]'s privacy interest and [Fogel]'s right, by issuing an order limiting disclosure to [Fogel]'s eye only, just like the order in . . . *Speer*." *Id*.

After careful review, we are constrained to conclude that the trial court's order reflects an abuse of discretion. Insofar as the trial court believed that its order was "just like" the order in *Speer*, it misapplied the law, as it was not an AEO order. The order at issue in this appeal does **not** limit disclosure

to persons with a purely professional interest in the matter. In moving for a protective order, Goldenberg specifically requested, in the alternative to not producing his personal returns at all, that the documents be submitted for AEO. The court instead expressly provided for Fogel to access the private documents. This presents not only a seemingly unappreciated dissimilarity from the order affirmed in *Speer*, but also an unacknowledged divergence in the balance of interests that we approved in that case.

In addition to understating the intrusions that the order made upon Goldenberg's privacy rights, the court overstated the need that Fogel demonstrated for access to the private documents. The plaintiffs in *Speer* sought the defendants' personal tax returns in pursuit of discovering their personal wealth, something the law recognized as relevant to their claim for punitive damages. Here, Fogel has not articulated any comparable right to discover the extent of Goldenberg's net worth, nor established that there is no reasonable alternative to granting him access to Goldenberg's personal tax returns to discover information to which he is entitled. At bottom, Fogel contends that, rather than thoroughly analyzing the documents that have been produced and asking the court to compel the business entities to fully comply with any outstanding requests, he wants to look at Goldenberg's personal returns because he has a hunch that he might catch Goldenberg in a lie. This uncorroborated suspicion amounts to a prohibited fishing expedition. *See Copestakes*, 925 A.2d at 876.

Rather than being comparable to **Speer**, we find the situation presented by this case is more akin to that presented in **Thackray-Tadley v. WTA Real Estate Mgmt. Co.**, 299 A.3d 901, 2023 WL 3478427 (Pa.Super. 2023) (non-precedential decision). There, TCR, a family-owned crane rental company, created multiple single-purpose entities to own various commercial properties that TCR rented for equipment storage. One of those entities engaged in a property exchange with the city of Philadelphia in connection with a condemnation. The plaintiffs, two members of the family that owned TCR, sued involved entities and their siblings who operated them alleging breach of fiduciary duty and other claims of mismanagement. During the course of discovery, the defendants requested the plaintiffs' personal tax returns, purportedly to establish that they had received benefits from the allegedly flawed exchange with the city. The plaintiffs objected, observing that the information was available from other sources, namely the K-1 tax forms that the defendants prepared for the plaintiffs.

The trial court granted the motion to compel, crediting the defendants' arguments that they did not know what the plaintiffs reported to the IRS and that information about whether they received a benefit from the transaction was only available in the enumerated tax returns. Upon reviewing the record, this Court concluded that the trial court abused its discretion in mandating production of the plaintiffs' full tax returns for the years in question. We explained:

> First, we disagree with the trial court's conclusion that [the plaintiffs]' tax returns were the only source for information about the benefit [the plaintiffs] received from the [property exchange]. Indeed, [the defendants] concede in their brief that such information could be obtained through alternative sources. Additionally, although portions of [the plaintiffs]' tax returns may have contained information concerning the [property exchange], the trial court did not appear to weigh [the defendants]' right to that information with [the plaintiffs]' privacy interest in their personal tax returns. Indeed, the trial court could have structured the discovery order to provide [the defendants] with access to relevant information without undermining [the plaintiffs]' right to privacy.

*Id*. at *4 (cleaned up).

The same is true here. The certified record does not support Fogel's claim that he requires Goldenberg's personal returns to determine whether the real estate developments in question generated income and, if so, where it went. Fogel himself acknowledges that other sources exist for this information, namely Defendants' financial records. His complaint that those records have yet to be produced in full is cause to enforce the order compelling their production, not to engage in a fishing expedition through thirty years of Goldenberg's personal returns in which he has an established, significant privacy interest.

Therefore, we hold that the trial court abused its discretion in denying Goldenberg's motion for a protective order given the state of the record as it presently exists. Accordingly, we reverse that order and remand for proceedings to continue.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/20/2025