J-A17042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GARY FIELDING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH WROBLESKI, DO AND | : | |
| WAYNE MEMORIAL HOSPITAL | : | |
| | : | No. 1340 EDA 2023 |
| | : | |
| PETITION OF: WAYNE MEMORIAL | : | |
| HOSPITAL | : | |

Appeal from the Order Entered October 13, 2022
In the Court of Common Pleas of Wayne County
Civil Division at No(s):  2020-CV-241

BEFORE:  BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED SEPTEMBER 4, 2025**

Wayne Memorial Hospital ("WMH") appeals from the order denying its motion for a protective order concerning a patient-safety investigation report ("the report").  This appeal comes to this Court following entangled procedural facts in the trial court.  As a general matter, this is an appeal from the collateral order in a discovery dispute raised during the medical malpractice action brought by Gary Fielding ("Fielding") against WMH and Joseph Wrobleski, DO ("Wrobleski").  When Fielding sought to compel disclosure of a report regarding a procedure he underwent at WMH, WMH invoked state law privileges to object.  While the trial court initially agreed with WMH that a state law privilege applied, the court then reconsidered its decision and subsequently ordered disclosure of the report.  During further litigation over

the trial court's reconsidered decision, WMH, raised, for the first time, a privilege under federal law, and filed a new motion for protective order based on the federal privilege. The trial court, in relevant part, determined WMH "waived" the federal privilege by failing to raise it in response to Fielding's initial motion to compel. Upon thorough review of the record in this matter, we discern no error in the trial court's conclusion that WMH failed to timely preserve its claims of a federal law privilege, and we affirm.

We summarize the relevant factual history of this appeal as follows. In 2018, Fielding underwent a surgical procedure at WMH. During the surgery, a fire broke out around his shoulder ("the fire"). *See* Am. Compl., 9/21/20, at ¶¶ 6-7. Shortly after the fire, Nurse Manager Elizabeth Korb ("Korb") created the subject report by completing a form on WMH's computer system. *See* N.T., 4/27/22, at 12-17.[1]

Fielding brought the underlying medical malpractice action against Wrobleski, the attending surgeon, and WMH. During discovery, WMH refused to answer Fielding's interrogatories concerning reports about the fire, citing privileges under Pennsylvania's Peer Review Protection Act ("PRPA") and an

_____

[1] The form was labelled "patient safety work product," and bears a stamp that it is confidential under various state laws. WMH's Reconsider. Mot. of Order Dated 7/7/22, 8/19/22, Ex. C., at 1, 4. The completed report indicated it had been sent to "CHART Institute Patient Safety Organization." WMH's Reconsider. Mot. of Order Dated 7/7/22, 8/19/22, Ex. C., at 4.

unspecified "Patient Safety Act," among others. *See* Mot. to Compel, 11/24/24, at 3.[2]

Although relevant, the remaining procedural history is lengthy and unnecessarily complicated. In November 2021, Fielding moved to compel disclosure of WMH's accident or incident reports about the fire. *See id*. at 7. WMH answered and requested a protective order based on PRPA privileges. *See* WMH's Answer to Mot. to Compel, 12/20/21, at 4.

After reviewing documents *in camera*, the trial court held a hearing in April 2022 ("the April 2022 hearing") at which WMH presented testimony from Nurse Manager Korb and Director of Patient Safety James Pettinato ("Pettinato"). In line with WMH's claim of PRPA privileges, Korb and Pettinato testified the report was prepared for, and part of, a root cause analysis performed in anticipation of peer review. *See* N.T., 4/27/22, at 12-17, 34-43. During his cross-examination, Pettinato referred to "CHART" as WMH's insurer, which also owned, and provided WMH with, the software (also referred to as "RL Solution") used to create the report. *See id*. at 70-71. Pettinato initially answered affirmatively when asked if a copy of the report went to "CHART," WMH's insurer, but he later stated he did not know if WMH

_____

[2] PRPA, which is codified at 63 P.S. §§ 425.1-425.4, "is designed to foster candor and frankness in the creation and consideration of peer-review data by conferring immunity from liability, as well as confidentiality . . .." *Leadbitter v. Keystone Anesthesia Consultants, Ltd.*, 256 A.3d 1164, 1169 (Pa. 2021). WMH's answers to interrogatories did not provide a statutory citation for its reference to the "Patient Safety Act."

sent a copy of the report to its insurer. *See id*. at 71-72. The trial court concluded that PRPA applied and issued a protective order. *See* Order, 4/28/22, at 1.

Fielding moved for reconsideration, arguing Pettinato testified that WMH disclosed the report to WMH's insurer, "CHART Insurance," which was not part of WMH's peer review process. Fielding's Mot. to Reconsider., 5/27/22, at 2-3, 5. WMH answered, claiming that Fielding failed to present new evidence, a change in controlling law, or clear error necessitating reconsideration. *See* WMH's Answer to Mot. to Reconsider., 6/21/22, at 3-4. WMH specifically denied disclosing the report to "CHART," although it offered no further clarification on what "CHART" was, or the relationship between "CHART" and WMH. *See id*. at 5-6; *see also* N.T., 6/21/22, at 16.

Following oral arguments in June 2022 ("the June 2022 arguments"), the trial court, by order dated July 7, 2022, and entered July 15, 2022, granted Fielding's reconsideration motion ("the July 2022 order"). The court concluded PRPA did not protect the report because it contained information gleaned from original sources and WMH shared it with its insurer. *See* Order, 7/15/22 at 1. The court required disclosure of the report within ten days of the July 2022 order. *See id*.

WMH did not comply, and, in August 2022, filed a petition for leave to file for reconsideration *nunc pro tunc*. In the petition, WMH averred it should have an opportunity to establish that the incident report was not shared with

its insurer. *See* Pet. for Leave, 8/9/22, at 3. The trial court denied leave to file *nunc pro tunc*.

WMH nevertheless filed a motion for reconsideration without the court's leave. In its reconsideration motion, WMH asserted, for the first time, that the federal Patient Safety and Quality Improvement Act of 2005 ("PSQIA"), which protects "patient safety work product" reported to a certified "patient safety organization" ("PSO")—should apply.[3] *See* WMH's Mot. to Reconsider. July 2022 Order, 8/19/22, at 5-12. WMH attached a redacted copy of the report and referenced an area indicating that WMH sent the report to "CHART Institute Patient Safety Organization (PSO)." *See id*. at 40 & Ex. C at 4. Because "CHART Institute" was a PSO, and not an insurer, WMH also argued, disclosure to "CHART Institute" would not vitiate PRPA's peer review privilege. *See id*. at 13. The trial court denied WMH's motion for reconsideration. Order, 8/23/22, at 1.

WMH still did not disclose the report, and Fielding filed for sanctions. The day after Fielding filed for sanctions, WMH filed a motion for a protective order based on the federal PSQIA privilege ("PSQIA motion"). WMH's PSQIA motion essentially repeated the claims raised in WMH's unauthorized motion for reconsideration. WMH also attached an affidavit from Patient Safety Officer Jane Domaracki ("Domaracki"), indicating, *inter alia*, WHM disclosed

_____

[3] *See* 42 U.S.C.A. § 299b-22; *see also Ungurian v. Beyzman*, 232 A.3d 786, 796 (Pa. Super. 2020).

the report to "CHART Institute," WMH's PSO, via "CHART Institute's" patient safety evaluation system ("PSES"). *See* WHM's PSQIA Mot., 8/31/22, Ex. F. at 2. WMH also attached an internet list of PSOs, which included a reference to "CHART Institute." *See id*., Ex. G.

The trial court scheduled arguments on WMH's PSQIA motion and Fielding's motion for sanctions. *See* Order 9/6/22, at 1. At arguments in October 2022 ("the October 2022 arguments"), WMH's counsel conceded he had not raised PSQIA at the April 2022 hearing held on Fielding's motion to compel and the June 2022 arguments on Fielding's motion for reconsideration. *See* N.T., 10/11/22, at 15-17. WMH's counsel explained he had been aware of the PSQIA protections but made a tactical decision to rely on PRPA; further, because WMH initially prevailed on PRPA, counsel believed it unnecessary to raise PSQIA until after the court's July 2022 order granting Fielding's motion for reconsideration and compelling disclosure of the report. *See id*. at 12-14.[4]

On October 13, 2022, the trial court entered the order denying WMH's PSQIA motion ("the October 2022 order"). The court reasoned WMH should have raised PSQIA protections in response to Fielding's motion to compel production of the report or to Fielding's motion for reconsideration. *See*

---

[4] WMH, at the hearing on its PSQIA motion, did not assert the PSQIA protections could not be waived. *See* N.T., 10/11/22, at 11, 18.

Order, 10/13/22, at 1 n.1. The court concluded WMH's failure to do so "waived its PSQIA protection argument." *Id*.

WMH did not file a notice of appeal from the October 2022 order. Instead, on the thirtieth day for so doing, WMH filed a motion for reconsideration and a request that the trial court amend the October 2022 order to include a certificate of immediate appeal. *See* 42 Pa.C.S.A. § 702; Pa.R.A.P. 1311. WMH asserted, for the first time, that PSQIA protection cannot be waived. *See* Br. in Support of Mot. to Reconsider. Oct. 2022 Order, 11/14/22, at 11. The trial court denied the request for amendment by order dated November 28, 2022 and docketed November 29, 2022 ("the November 2022 order"). *See* Order, 11/29/22.

On December 23, 2022, WMH filed in this Court a petition for permission to appeal the November 2022 order denying the request to amend the October 2022 order. Fielding petitioned this Court to quash WMH's appeal. This Court treated WMH's requests for discretionary review as a notice of appeal from the October 2022 order, *see* Pa.R.A.P. 1316 (governing the incorrect use of a petition for permission to appeal), but issued a rule to show cause why this appeal should not be quashed because WMH should have appealed the July 2022 order, which first compelled disclosure of the report. WMH filed a response to the rule to show cause.

WMH raises the issues for appeal our review:

A. Whether [WMH] timely brought this appeal to the Superior Court?

B. Whether the privileges and protections provided under the PSQIA can be waived?

C. In the alternative, even if the privileges and protections of the PSQIA can be waived (which is specifically denied), whether [WMH] did waive those privileges?

WMH's Brief at 3 (reordered).

Initially, this Court must resolve the jurisdictional questions raised by the prolonged procedural history of this case and discussed in WMH's first issue. **See Jones v. Faust**, 852 A.2d 1201, 1203 (Pa. Super. 2004) ("Prior to examination of Appellants' claims, we must determine whether because of untimeliness or lack of appealability these orders are properly before us"). The respective standard and scope of review over these jurisdictional matters is *de novo* and plenary. **See Crespo v. Hughes**, 292 A.3d 612, 615 (Pa. Super. 2023)

Generally, appeals from discovery disputes involving an evidentiary privilege may be taken under Pa.R.A.P. 313. **See Smith v. O'Brien**, 321 A.3d 1034, 1039 (Pa. Super. 2024) (*en banc*) (noting that Pa.R.A.P. 313 permits an appeal of an order that is: (1) separable from and collateral to the main cause of action where (2) the right involved is too important to be denied review and (3) the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost).

This Court has explained:

> [T]he timeliness of appeals from collateral orders depends not upon entry of the order itself, but upon resolution of the collateral matter. And, although collateral orders may be appealed within 30 days of their entry, the substance of the collateral order is not forever precluded when an appeal is not taken within this period. As the order involved here is a discovery matter, by definition preliminary and in addition concerned with resolution of collateral issues, clearly no finality is implicated.

*Cabot Oil & Gas Corp. v. Speer*, 241 A.3d 1191, 1198 (Pa. Super. 2020) (citation omitted). Accordingly, this Court has considered appeals from the last in a series of interlocutory orders resolving a collateral matter. *See id*. (declining to quash an appeal taken more than thirty days after the entry of order compelling disclosure, but within thirty days of the denial of appellant's timely motion for reconsideration); *see also Jones*, 852 A.2d at 1202-03 (considering issues related to an order directing production of medical reports where the appellant did not appeal the initial order to compel production, but appealed within thirty days of subsequent orders sanctioning the appellant and requiring the production of additional medical reports).

Here, the October 2022 order, similar to *Cabot* and *Jones*, was the last in a series of interlocutory orders that resolved a relatively narrow matter of whether WMH was entitled to a protective order over the report.[5] Moreover,

_____

[5] We acknowledge the present appeal involves different and more prolonged procedures than presented in *Cabot* and *Jones*, and we reject WMH's argument that it "perfectly timed" its appeal to challenge the trial court's failure to analyze and apply PSQIA. We do not condone the type of serial motions practice engaged in by WMH.

there is no meaningful dispute that the issue on which WMH seeks review, namely, the application of the PSQIA and its claim that the PSQIA cannot be waived, could otherwise meet the elements of the collateral order doctrine. *See* Pa.R.A.P. 313; *Smith*, 321 A.3d at 1039. The issue is separate and collateral to the merits of Fielding's medical malpractice claim, the claimed rights are deeply rooted in public policy and go beyond the matter at hand, and the claimed right would be irreparably lost if review is postponed. *See* Pa.R.A.P. 313. Furthermore, because we may regard WMH's timely pursuit of an appeal, under 42 Pa.C.S.A. § 702 and Pa.R.A.P. 1311, as a notice of appeal from the October 2022 order, *see* Pa.R.A.P. 1316(a), we decline to quash this appeal.[6]

WMH, in its second issue, asserts that PSQIA protections cannot be waived.[7] This issue raises a question of law over which our standard of review is *de novo* and our scope of review is plenary. *See Ungurian*, 232 A.3d at 794.

PSQIA protects "patient safety work product," which it defines as "any data, reports, records, memoranda, analyses (such as root cause analyses),

---

[6] We have amended the caption of this appeal to reflect that this is an appeal from the trial court's October 13, 2022 order.

[7] We acknowledge Fielding correctly asserts that WMH did not claim PSQIA could not be waived until after the trial court denied WHM's PSQIA motion in October 2022. However, we will review WMH's claim to the extent it asserts PSQIA precludes a trial court from finding waiver.

or written or oral statements . . . which . . . are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization[.]" ***See*** 42 U.S.C.A. §§ 299b-21(7)(A)(i)(I), 299b-22(a). Subsections (a) and (b) of section 299b-22 provides that "patient safety work product" shall be privileged and confidential and shall not be subject to a discovery order in a State civil proceeding or disclosed. ***See*** 42 U.S.C.A. § 299b-22(a)-(b). These protections apply notwithstanding any other provision of state law. ***See*** 42 U.S.C.A. § 299b-22(a)-(b).

Subsection (c) sets forth exceptions to the general rule of privilege and confidentiality and recognizes limited circumstances under which a party may disclose patient safety work product. ***See*** 42 U.S.C.A. § 299b-22(c).[8] The duties to protect patient safety work product are continuing, and subsection (d)(1) sets forth the following general rule:

> Patient safety work product that is disclosed under subsection (c) shall continue to be privileged and confidential as provided for in

---

[8] One such exception applies to "nonidentifiable patient safety work product." ***See*** 42 U.S.C.A. § 299b-22(c)(2)(B) (stating subsection (b) governing confidentiality does not apply to disclosures of nonidentifiable patient safety work product). PSQIA thus maintains a distinction between nonidentifiable and identifiable patient safety work product, the latter of which is defined as patient safety work product that "allows the identification of any provider that is a subject of the work product, or any providers that participate in activities that are a subject of the work product; [ ] constitutes individually identifiable health information . . . ; or [ ] allows the identification of the reporter." ***See*** 42 U.S.C.A. § 299b-21(2); ***see also*** 42 U.S.C.A. § 299b-21(3) (defining nonidentifiable patient safety work product as patient safety work product that is not identifiable patient safety work product).

subsections (a) and (b), and **such disclosure shall not be treated as a waiver of privilege or confidentiality**, and the privileged and confidential nature of such work product shall also apply to such work product in the possession or control of a person to whom such work product was disclosed.

42 U.S.C.A. § 299b-22(d)(1) (emphasis added); **see also** 42 C.F.R. § 3.208(a) (" . . . patient safety work product disclosed in accordance with this subpart, **or disclosed impermissibly**, shall continue to be privileged and confidential") (emphasis added).

Pennsylvania law employs shifting burdens of proof in disputes over privileges:

> **The party asserting privilege bears the burden of producing facts establishing proper invocation of the privilege**.  Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies.  **Accordingly, if the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party**, and the communication is not protected . . ..

**Carlino E. Brandywine, L.P. v. Brandywine Vill. Associates**, 260 A.3d 179, 197 (Pa. Super. 2021) (internal citations omitted) (emphases added).

WMH argues that once PSQIA protections attach, they cannot be waived. **See** WMH's Brief at 15-17, 23.  WMH asserts section 299b-22(d)(1) and 42 C.F.R. § 3.208 confirm PSQIA protections cannot be waived.  **See id**. at 12, 17.  Additionally, WMH finds support in the case law of other jurisdictions, including a recent Nevada Supreme Court decision in **Sunrise Hosp. & Med.**

*Ctr., LLC v. Eighth Judicial Dist. Court in & for Cnty. of Clark*, 544 P.3d 241, 247 (Nev. 2024), which stated, "Because the PSQIA does not contemplate waiver of the privilege over identifiable patient safety work product, . . . such a privilege cannot be waived."[9]

The trial court, as noted above, denied WMH's PSQIA motion because WMH failed to raise the issue of protection under PSQIA when responding to Fielding's motion to compel, did not present evidence concerning PSQIA at the April 2022 hearing, and did not claim PSQIA protections in its answer to Fielding's motion for reconsideration, or at the June 2022 arguments. The court thus concluded WMH waived its PSQIA protection argument.

Following our review, we discern no merit to WMH's broad assertion that it cannot waive its PSQIA claim. WMH conflates a party's "waiver" of an evidentiary privilege with the concept of "waiver" rooted in issue preservation. Although there is some overlap, the former focuses on the privilege-holder's relinquishment of a privilege; the latter focuses on the party's (or its attorney's) conduct during litigation. *See Sprague v. Walter*, 656 A.2d 890, 911 (Pa. Super. 1995) ("A privilege of non-disclosure must be asserted during a discovery proceeding or it will be waived"); *see also Law Office of*

_____

[9] WMH discussed *Sunrise* at oral arguments, and this Court granted Fielding's request for supplemental briefs to address that decision. We note with disapproval that while Fielding's fifty-two-page supplemental brief addressed *Sunrise* at various points, it also argued, at length, additional matters beyond the scope of our order. We will disregard those additional matters.

***Douglas T. Harris, Esquire v. Philadelphia Waterfront Partners, LP***, 957 A.2d 1223, 1232 (Pa. Super. 2008) (citing Pa.R.A.P. 302 and concluding "a client implicitly waives the attorney-client privilege when his attorney fails to invoke and/or assert the privilege before the trial court, only to then raise the issue for the first time on appeal").

Moreover, WMH's reliance on section 299b-22(d)(1) and 42 C.F.R. § 3.208 is misplaced as those provisions relate to the continued protection of patient safety work product ***after*** a disclosure. The statute and rule do not speak to the party's initial burden to raise present facts concerning an evidentiary privilege in a timely manner. ***See Ungurian***, 232 A.3d at 796; ***Carlino***, 260 A.3d at 197. Similarly, the cases relied on by WMH do not support a broad contention that PSQIA protection can never be waived where a party fails to develop an issue properly. ***Sunrise***, in particular, is inapt because that case concerned the continuing PSQIA protections after previous disclosures of information, and counsel in ***Sunrise*** timely preserved an objection with respect to the specific information sought from the witness.[10]

_____

[10] In ***Sunrise***, the plaintiff deposed the chairperson of a facility's patient safety committee ("Dr. Murawsky") and attempted to discover what information the committee examined in its investigation of an adverse event. ***See Sunrise***, 544 P.3d at 245. The facility's counsel objected to the questioning under both state law and the PSQIA. ***See id***. The trial court there concluded any privilege was waived by prior disclosures, namely, that the facility had already allowed Dr. Murawsky and others to testify about privileged topics. ***See id***. The trial
*(Footnote Continued Next Page)*

In short, WMH's "non-waiver" argument puts a substantive application of the privilege before the threshold burden to produce facts necessary to justify the privilege's application. WMH, as the proponent of the privilege, was required to adduce sufficient facts for the trial court to determine first whether PSQIA protections attached, *see Ungurian*, 232 A.3d at 796. It did not do so here, and we reject WMH's broader legal contention that PSQIA protections, as a matter of law, can never be waived.

In its final issue, WMH asserts that even if PSQIA privileges can be waived, WMH did not waive its claim. *See* WMH's Brief at 30. WMH insists it preserved a PSQIA objection to discovery of the report when responding to Fielding's interrogatories, properly responded to Fielding's motion to compel based on exceptions to PRPA, and, despite initially citing PRPA as the sole

_____

court interpreted PSQIA regulations to mean that patient safety work product disclosed permissibly shall not remain privileged. *See id*. at 246-47.

On appeal, the Nevada Supreme Court rejected the trial court's interpretation of the regulations, reversed, and interpreted the continuing protections of PSQIA to conclude that the prior disclosures did not "waive" the PSQIA privilege. *See id*. at 247-48 ("The statutory scheme does not permit a finding that a party has voluntarily relinquished PSQIA privilege pertaining to identifiable patient safety work product; that party might inadvertently disclose patient safety work product or disclose it in accordance with specific exceptions, but the privilege continues to exist"). The *Sunrise* Court thus remanded to the trial court for further consideration of whether PSQIA protections applied to the information sought from Dr. Murawsky. Notably, neither the facility nor the courts in *Sunrise* discussed whether the facility's objection during Dr. Murawsky's deposition would apply retrospectively to information already disclosed by other witnesses or otherwise cured the facility's prior failures to object during those witnesses' depositions.

response to Fielding's motion to compel, presented evidence from which the trial court could conclude that PSQIA protections attached to the report. *See id*. at 31-34. WMH insists that WMH disclosed the report to a PSO and no other third-party entity. *See id*. at 32, 34. WMH also asserts the trial court deprived it of a meaningful opportunity to explain how PSQIA protected the report and clarify that any disclosure to "CHART" did not waive WMH's claimed privileges. *See id*. at 33-34.

The trial court, as noted above, found WMH waived its arguments based on PSQIA protections. *See* Trial Ct. Op., 8/8/23, at 3. The court explained WMH had ample opportunity to raise PSQIA during the litigation of Fielding's initial motion to compel, and WMH was not entitled to a "second bite at the apple" of a decided matter, "all while in plain disregard of th[e c]ourt's order to produce the . . . report." *Id*. The court added that by the time of its October 13, 2022 order, there was nothing in the record, except for Patient Safety Officer Domaracki's affidavit that indicated the report was provided to a duly certified PSO. *See id*. at 4. The court further noted Pettinato's testimony at the April 2022 hearing, at which Pettinato indicated a copy of the report had been sent to an insurer. *See id*. at 4.

Following our review, we conclude WMH is not entitled to relief. Even assuming WMH's vague reference to the "Patient Safety Act" in its answers to

interrogatories claimed a protection under the PSQIA,[11] WMH made a strategic decision to rely solely on PRPA's peer review protections when defending against Fielding's motion to compel. **See** N.T., 10/11/22, at 12-14. WMH's evidence at the April 2022 hearing made no mention of PSQIA or a disclosure of the report to a PSO, **see** N.T., 4/27/22 at 9-10, 13 (indicating Nurse Manager Korb completed the form to initiate the peer review process). Critically, when Pettinato either discussed possible disclosures of the report to WMH's insurer or loosely referred to "CHART," WMH took no efforts to distinguish "CHART Insurance," as WMH's insurer, from "CHART Institute," as a PSO. **See id**. at 71-72 (indicating Pettinato's testimony that "C[HART] provides the RL Solution[ of] the event reporting that's provided through our insurance company or the actually [sic] software owners of the product" and "[t]he insurance company is the one that gives us softwares [sic] that we use").

_____

[11] As noted above, WMH's answers to interrogatories referred to the "Patient Safety Act" without citation. **See** WMH's Brief at 5 (reproducing answers to interrogatories). We note that the implementing regulations refer to PSQIA as the "Patient Safety Act." 42 C.F.R. § 3.20. However, Pennsylvania courts have occasionally referred to the portions of the Pennsylvania Medical Care Availability and Reduction of Error Act ("MCARE"), 40 P.S. §§ 1303.301– 1303.315, as the "Patient Safety Act." **Venosh v. Henzes**, 2013 WL 9593953, at *10 (Pa. Com. Pl. July 17, 2013), amended, (Pa. Com. Pl. 2013). Therefore, the reference to the "Patient Safety Act" could be construed as ambiguous.

While WMH initially prevailed on its PRPA argument, when Fielding sought reconsideration arguing that Pettinato testified WMH disclosed the report to its insurer, WMH did avail itself of the opportunity to clarify the obvious dispute and possible confusion regarding Pettinato's references to "CHART." WMH did not refer to the PSQIA or attempt to clarify that "CHART" was a PSO. *See* WMH's Answer to Mot. to Reconsider., 6/21/22, at 5-6.[12] After the trial court then determined PRPA did not apply, WMH filed a petition to file a motion for reconsideration of the July 2022 order *nunc pro tunc*, but solely to clarify WMH did not disclose the report to its insurer. *See* Pet. for Leave, 8/9/22, at 3. WMH again did not reference PSQIA or a PSO. *See id*. The trial court denied that motion.

Based on the foregoing record, we discern no error in the trial court's conclusion that WMH failed to timely preserve its PSQIA claims by meeting its initial burden of producing facts and sufficient legal arguments concerning the application of PSQIA. Contrary to WMH's assertions, WMH had ample opportunities to assert PSQIA protections and establish "CHART" was a PSO when responding to Fielding's motion to compel, at the April 2022 hearing, in response to Fielding's motion for reconsideration, at the June 2022 arguments, and even when seeking leave to file for reconsideration *nunc pro*

---

[12] Indeed, in its answer to Fielding's motion for reconsideration, and presumably referring to its insurer, WMH "specifically denied that the . . . report was provided to CHART . . .." WMH's Answer to Mot. to Reconsider, 6/21/22, at 5-6 (some capitalization omitted).

*tunc*. WMH did not avail itself of any of those opportunities. Instead, after the trial court denied WMH's petition to file a motion for reconsideration of the July 2022 order *nunc pro tunc*, WMH filed, without leave of court, a motion for reconsideration raising PSQIA for the first time. When the trial court denied that motion, WMH filed its belated PSQIA motion. However, just as a party may not raise an issue for the first time in a motion for reconsideration, **see Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.**, 143 A.3d 930, 938 n.4 (Pa. Super. 2016), we discern no authority permitting a party to relitigate a motion to compel via a new motion for a protective order which raises new facts and new legal theories it elected not to raise previously. WMH bore the initial burden of establishing facts that a privilege applied, and given WMH's belated and piecemeal litigation of the PSQIA issue, the trial court was under no obligation to consider an issue not properly raised in a timely fashion.[13] Thus, we discern no error in the trial court's decision that WMH waived its PSQIA arguments when opposing disclosure of the report.

Order affirmed.

Judge Nichols joins this decision.

Judge Bowes concurs in the result.

---

[13] We note that on appeal, WMH still does not seek a determination that PSQIA applied based on the facts and arguments raised in its PSQIA motion, only a decision that it did not waive PSQIA and a remand for the trial court to determine if PSQIA applies.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>9/4/2025</u>